# EXHIBIT 1

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| IN RE MOTION TO COMPEL COMPLIANCE WITH RULE 45 SUBPOENA ISSUED TO ETHICARE ADVISORS, INC. | Civil Action No. 2:20-cv-01886<br><br>*DOCUMENT FILED ELECTRONICALLY* |
|---|---|

**REPLY BRIEF IN SUPPORT OF MOTION TO COMPEL COMPLIANCE WITH RULE 45 SUBPOENA**

Jeffrey A. Carr
Jason J. Moreira
**PEPPER HAMILTON LLP**
301 Carnegie Center, Suite 400
Princeton, NJ 08543

James W. Boswell III
Jennifer S. Lewin
**KING & SPALDING LLP**
1180 Peachtree Street N.E.
Atlanta, GA 30309-3521

*Attorneys for Plaintiffs*

Dated: March 30, 2020

# TABLE OF CONTENTS

**Page**

ARGUMENT ........ 2

A. EthiCare's Reimbursement Methodology Is Highly Relevant to DaVita's Claims Against WinCo and Necessary for DaVita to Try the District of Idaho Case. ........ 2

1. EthiCare's Reimbursement Methodology Is Highly Relevant to DaVita's Case Against WinCo. ........ 3

2. EthiCare's Reimbursement Methodology Is Ne2cessary for DaVita to Prepare Its Case. ........ 5

3. EthiCare's Reimbursement Methodology Is Not a Trade Secret, But Even If It Is, DaVita Is Entitled to Discover It. ........ 6

4. The Stipulated Protective Order Will Prevent Harm to EthiCare. ........ 8

B. EthiCare Has Not Established that Production of Its Communications with WinCo Would Be an Undue Burden. ........ 9

C. An Order Compelling Production Is Appropriate Because EthiCare Has Not Completed Its Production of Documents Responsive to Requests 1 and 7-9. ........ 10

**TABLE OF AUTHORITIES**

**Page(s)**

*APG-Int'l, Inc. v. MERO-TSK, Inc. GmbH & Co. KG*, No. 08-6028-JEI-KMW, 2012 WL 13018967 (D.N.J. Jan. 12, 2012) .......... 7

*Biomet, Inc. v. Howmedica Ostenics Corp.*, No. 14-6634, 2015 WL 1543221 (D.N.J. Apr. 7, 2015) .......... 10

*Biotechnology Value Fund, et al. v. Celera Corp.*, No. 14-4046, 2014 WL 4272732 (D.N.J. Aug. 28, 2014) .......... 2, 3

*Coca-Cola Bottling Co. v. Coca-Cola Co.*, 107 F.R.D. 288 (D. Del. 1985) .......... 3, 5, 6, 8

*Federal Open Market Committee v. Merrill*, 443 U.S. 340 (1979) .......... 7

*In re Lazaridis*, 865 F. Supp. 2d 521 (D.N.J. 2011) .......... 10

*Mallinckrodt LLC v. Actavis Laboratories FL, Inc.*, No. 2:15-cv-3800, 2017 WL 5476801 (D.N.J. Feb. 10, 2017) .......... 10

*Opperman, et al. v. Allstate New Jersey Ins. Co.*, No. 07-1887, 2008 WL 5071044 (D.N.J. Nov. 24, 2008) .......... 3, 4, 6, 7, 8

*Pansy v. Borough of Stroudsburg*, 23 F.3d 772 (3d Cir. 1994) .......... 7

*Robotic Parking Sys., Inc. v. City of Hoboken*, No. 06-3419 (SRC)(MAS), 2010 WL 324524 (D.N.J. Jan. 19, 2010) .......... 7

*Smith v. BIC Corp.*, 869 F.2d 194 (3d Cir. 1989) .......... 7

*In re Stewart Title Co.*, No. H-09-247, 2009 WL 1708079 (S.D. Tex. June 17, 2009) .......... 9

*In re Vitamins Antitrust Litigation*, 267 F. Supp. 2d 738 (S.D. Ohio 2003) .......... 9

Under a standard of either relevance or substantial need, Plaintiffs in the underlying case (collectively, "DaVita") are entitled to production of EthiCare Advisor, Inc.'s ("EthiCare") reimbursement methodology. EthiCare is the only source of the information, and DaVita unquestionably needs it to try a case that turns on whether the reimbursement methodology was accurate and reasonable. Further, EthiCare's production would be subject to the judicially-imposed "attorneys' eyes only" protective order, which is sufficient to allay its trade secret concerns.

EthiCare does not dispute that it marketed and implemented a reimbursement methodology that severely reduced the rate that its customer WinCo paid DaVita for dialysis treatment. In an effort to bar DaVita from discovery, EthiCare asserts that DaVita's claim against WinCo "is not a question of methodology" but is instead "a matter of comparing two numbers—the UCR rate that Plaintiffs believe is appropriate, and the rate at which providers were actually reimbursed." Opp. at 9. EthiCare goes so far as to declare that *everything but the actual amount that WinCo paid DaVita* is a trade secret. Not only is EthiCare poorly positioned to opine on questions of relevance in the Idaho litigation, EthiCare is also wrong about the scope of trade secret protection.

DaVita rendered life-saving dialysis services to critically ill WinCo plan members, and DaVita, not to mention the ERISA plan members whose claims were assigned, is entitled to understand (and challenge) how the ERISA plan paid for these services. Under a discovery relevance standard, the process that went into formulating the payment amount is as relevant as the amount itself. Moreover, EthiCare's reimbursement methodology is necessary to DaVita's claims against WinCo. To distill the issue even further: WinCo severely underpaid DaVita at a rate that EthiCare derived based on a reimbursement formula that it is now trying to keep secret.

EthiCare's position that *no one—neither DaVita, WinCo nor even the court that has to make the underpayment determination*—can know the calculations that led to the ultimate payment is patently absurd. As EthiCare itself acknowledges in its Opposition brief, determining what is "Usual," "Customary," and "Reasonable," involves application of "judgment" and "statistical analysis." *See* Opp. at 7. The Idaho court trying DaVita's case against WinCo cannot possibly determine if the underlying judgment and statistical analysis are accurate and reasonable and comply with the relevant ERISA plan if it has no idea what judgments were made or what statistical analyses were applied.

The District of Idaho's protective order is adequate to protect EthiCare's information. EthiCare identifies no shortcomings of the protective order or any necessary provision that it lacks. From EthiCare's perspective, no protective order could ever be sufficient to protect disclosure, a position that courts in this district have rejected. In short, DaVita has established grounds to compel EthiCare to produce all documents reflecting its calculation of the amounts paid to DaVita and its repricing methodology.

## ARGUMENT

### A. EthiCare's Reimbursement Methodology Is Highly Relevant to DaVita's Claims Against WinCo and Necessary for DaVita to Try the District of Idaho Case.

In its opening brief, DaVita outlined the well-established burden-shifting standard on a motion to compel. *See* Mot. at 6. "If the subpoenaing party shows the documents sought to be relevant, the resisting non-party must 'explain why discovery should not be permitted.'" *Biotechnology Value Fund, et al. v. Celera Corp.*, No. 14-4046, 2014 WL 4272732, at *1 (D.N.J. Aug. 28, 2014). Not only did DaVita establish relevance in its opening brief, it explained its substantial need for these documents. *See* Mot. at 8, 9 n.6. In the Opposition, EthiCare raised an argument that the information at issue is a trade secret. (EthiCare had not made this trade-secret

objection in its response to the Subpoena.) As a result, DaVita addresses in this Reply why the information sought is both relevant and necessary. *See Opperman, et al. v. Allstate New Jersey Ins. Co.,* No. 07-1887, 2008 WL 5071044, at *3 (D.N.J. Nov. 24, 2008).

***1. EthiCare's Reimbursement Methodology Is Highly Relevant to DaVita's Case Against WinCo.***

In the *WinCo* case, DaVita's allegations that WinCo drastically underpaid DaVita turn on how the payments were calculated. EthiCare's severe cut in dialysis payments violated the terms of the WinCo plan, which required WinCo to reimburse DaVita at the usual, customary, and reasonable rate ("UCR").[1] EthiCare's actual reimbursement formula is relevant to establishing the true UCR rate. *See Biotechnology Value Fund,* 2014 WL 4272732, at *2 (compelling production of non-party documents that "could shed light on the extent to which Defendants' valuations . . . were erroneous" and noting that the non-party in that case "occupies a unique position to provide information touching on the drug's value that Plaintiffs cannot obtain from any other source"). "When disclosure of trade secrets is sought during discovery, the governing relevance standard that the movant must satisfy is the broad relevance standard applicable to pre-trial discovery, *i.e.*, the movant must show that the material sought is relevant to the subject matter of the lawsuit." *Coca-Cola Bottling Co. v. Coca-Cola Co.*, 107 F.R.D. 288, 293 (D. Del. 1985).

In *Opperman*, the District of New Jersey found that software from a non-party that identified payment amounts for insurance claims was central to the issues in the case and should be produced. *Opperman,* 2008 WL 5071044, at *3. The plaintiffs explained that the software

[1] "UCR" generally refers to the amount paid for a medical service in a geographic area based on what providers in the area usually charge for the same or similar medical services. *See UCR (Usual, Customary, and Reasonable)*, available at https://www.healthcare.gov/glossary/ucr-usual-customary-and-reasonable/.

was needed to determine *how* the pricing estimates were calculated. *Id*. The plaintiffs requested a copy of proprietary software from the nonparty that created the software, to analyze whether the software manipulated the pricing data inputs from certain stores. *Id*. The court held that the proprietary pricing software was essential to the plaintiffs' case:

> After considering all relevant evidence it is clear to this Court that the requested software is relevant to plaintiffs' claims. Plaintiffs argue that Allstate supplied them and the class with inaccurate and misleading repair cost estimates that were allegedly based on Home Depot pricing. ***Based on this claim, therefore, it is essential for plaintiffs to learn precisely how Allstate prepared its estimates.*** Since the requested software is an integral step in Allstate's calculations, plaintiffs must know how Allstate's software computes the final numbers used in Allstate's summaries, such as the documents prepared for plaintiffs' estimates. . . . Accordingly, the requested MS/B software is central to the issues in the case and should be produced.

*Id.* (emphasis added).[2]

Here, the case centers on WinCo's conduct after engaging EthiCare as its paid dialysis benefits administrator. WinCo has disclaimed knowledge of how EthiCare determined what is usual, customary, and reasonable reimbursement and has referred DaVita to EthiCare for this information. As the pleadings are now framed, virtually the entire Idaho case focuses on whether the way WinCo paid DaVita satisfied the requirements of the applicable ERISA plan. Specifically, the case involves whether WinCo, *at EthiCare's direction*, actually paid DaVita the UCR amount per the terms of the WinCo plan, or whether WinCo severely undercompensated DaVita in violation of the plan. Indeed, the lengths to which EthiCare is going to prevent production suggests that its methodology is highly relevant here.

---

[2]The court went on to explain that the confidentiality order, along with other measures, provided the defendant and the third-party software owner sufficient protection. *Id*. at *4–5. The court also rejected outright the non-party's argument that because it was a third party it should not have to produce its trade secrets. *Id*. at *5.

Finally, DaVita's request for EthiCare's pricing information as to WinCo is narrowly tailored: DaVita does not ask EthiCare to divulge its entire business model. DaVita specifically requests pricing information and repricing methodology related to how EthiCare caused its customer WinCo to reimburse DaVita for dialysis services in certain geographic markets. DaVita does not seek this data as to other EthiCare customers—it is solely focused on WinCo.

***2. EthiCare's Reimbursement Methodology Is Necessary for DaVita to Prepare Its Case.***

The information sought is also necessary for DaVita "to prepare its case for trial, which includes proving its theories and rebutting its opponent's theories." *See Coca-Cola Bottling Co.*, 107 F.R.D. at 293. To try the issue of whether the methodology was reasonable and complies with the ERISA plan, DaVita must know *how* EthiCare derived the reimbursement amounts. As EthiCare acknowledges, the UCR rate is dependent on multiple variables, including the appropriate size of the relevant geographic area to be used in calculating the UCR rate and what prevailing rates the providers in that area charge for a given service. *See* Opp. at 6-7 (citing Decl. of Mikulski ¶¶ 7–12). EthiCare's selection of these factors and manipulation of this data is relevant to whether WinCo paid DaVita the UCR rate. DaVita is entitled to challenge the assumptions underlying EthiCare's calculations, including the size of the geographic area, the number and type of providers used in the analysis, and prevailing rates those providers charged.

Resorting to extreme oversimplification, EthiCare contends that DaVita's claim against WinCo is "a matter of comparing two numbers—the UCR rate that Plaintiffs believe is appropriate, and the rate at which providers were actually reimbursed." Opp. at 9. EthiCare also asserts that it is "immaterial whether EthiCare's methodology is based on a percentage of Medicare or some other benchmark altogether." *Id.* at 10. But whether the output of the UCR calculation methodology is correct, or reasonable, depends on the accuracy and reasonableness

of the inputs that went into the methodology's application. *See Opperman*, 2008 WL 5071044, at *3. Proof of how the number was derived would certainly figure into a trial into whether that number is accurate and reasonable—not to mention whether it complies with the applicable ERISA plan. And, discovery from EthiCare itself (as opposed to WinCo or someone else) is necessary for DaVita to prepare for trial. If things are as WinCo says, neither DaVita nor the other party to the Idaho litigation, WinCo, knows how EthiCare came up with this number.

While DaVita suspects that EthiCare is only relying on the rate of reimbursement by Medicare (rather than typical charges in the geographic area), only EthiCare knows how it calculated the reimbursement rates that WinCo paid DaVita. DaVita cannot confirm this assumption, however, unless EthiCare discloses the underlying methodology and data. *See Coca Cola Bottling Co.*, 107 F.R.D. at 298 (finding that Coca Cola's secret formula was necessary to allow the plaintiffs to cross-examine defendant's witnesses).

### ***3. EthiCare's Reimbursement Methodology Is Not a Trade Secret, But Even If It Is, DaVita Is Entitled to Discover It.***

EthiCare broadly claims that all aspects of its calculation of the amounts paid to DaVita and its repricing methodology that purportedly calculates the UCR rate require trade secret protection. This cannot be the case. The inputs for calculating the UCR rate—such as the geographic areas in which WinCo members sought services from DaVita and what providers in that area typically charge for a set of services—are ascertainable and not trade secrets. And communications discussing these inputs and the manipulation of data—while potentially confidential—are not trade secrets.

Moreover, while EthiCare's specific "formula" for generating payments for dialysis treatment and services may be *proprietary*, it is not a trade secret. Indeed, EthiCare wrongly asserts that DaVita "appear[s] to concede" that EthiCare's calculation of the UCR rate

methodology is a trade secret. *See* Opp. at 5. DaVita said only that the information may be proprietary. Proprietary information is not necessarily a trade secret. *See Robotic Parking Sys., Inc. v. City of Hoboken*, No. 06–3419 (SRC)(MAS), 2010 WL 324524, at *4–5 (D.N.J. Jan. 19, 2010) (citing *Smith v. BIC Corp.*, 869 F.2d 194, 200 (3d Cir. 1989)) (holding that courts must examine the extent of the information's secrecy, economic value, development cost, and ease of duplication, among other factors, before determining the information to be a trade secret). EthiCare did not even itself claim that this information was a trade secret at the time it responded to the Subpoena.

But even if EthiCare's derivation of the amounts paid to DaVita, its calculations of the UCR rate (including the corresponding methodologies), and information related to these methodologies are all somehow trade secrets, there is ample authority for this Court to order production if the relevant and necessary standard is met.

As the Supreme Court has held, "there is no absolute privilege for trade secrets and similar confidential information." *Federal Open Market Committee v. Merrill*, 443 U.S. 340, 362 (1979) (citation omitted). To decide this motion, the Court "must balance the requesting party's need for [the trade secret] information against the injury that might result if uncontrolled disclosure is compelled." *Opperman*, 2008 WL 5071044, at *3; *see also Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 787 (3d Cir. 1994)*; APG-Int'l, Inc. v. MERO-TSK, Inc. GmbH & Co. KG,* No. 08-6028-JEI-KMW, 2012 WL 13018967, at *3 (D.N.J. Jan. 12, 2012). The "balance between the need for information and the need for protection against the injury caused by disclosure is tilted in favor of disclosure once relevance and necessity have been shown." *Coca-Cola Bottling Co.*, 107 F.R.D. at 293 (noting that "discovery is virtually always ordered once the movant has established that the secret information is relevant and necessary"); *see also*

*Opperman*, 2008 WL 5071044, at *5 (noting that numerous courts have ordered non-parties to produce trade secret information and citing multiple cases in which court ordered production of trade secret information in lawsuits in which non-parties were not directly involved). Judicial protection of the information under a Protective Order further tilts the balance in favor of production. And, the relevance and necessity of the information to the case (and presentation at trial) are amply demonstrated in Parts A.1. and A.2., *supra*.

***4. The Stipulated Protective Order Will Prevent Harm to EthiCare.***

EthiCare speculates that a protective order is insufficient to address its concerns over the confidential nature of its reimbursement methodology. *See* Opp. at 11. But, EthiCare fails to identify any necessary provision that the protective order lacks. *See id*. That is probably because the applicable protective order contains an Attorneys' Eyes Only level of protection designated to protect this very type of information and explicitly covers production from third parties. Under the protective order, designated confidential information may only be used for purposes of the District of Idaho case. *See* Exhibit D to Decl. of Jennifer S. Lewin In Support of Motion to Compel ("Stipulated Protective Order," §§ 5.1, 6.4).

Moreover, DaVita is not EthiCare's business competitor. *See Coca-Cola Bottling*, 107 F.R.D. at 299 (the "likelihood of harm is less than if defendant's trade secrets were disclosed in litigation to competitors" and holding that the disclosure of Coca Cola's secret formula is outweighed by the plaintiff's need for the information).[3] EthiCare's only real argument is that

[3]EthiCare speculates that DaVita could hire one of EthiCare's business competitors as an expert. Opp. at 12. There is no basis for such conjecture. To the extent it is material to the Court's consideration of this motion, DaVita can disclose the identity of its expert who will have access to the reimbursement methodology information. That individual has not yet been identified in the Idaho litigation, and DaVita is in the latter stages of interviewing candidates. But, it is clear that the expert DaVita selects will be from an independent consulting firm and will not be a competitor of EthiCare. Further, any expert DaVita retains and who has access to Confidential or Attorneys' Eyes Only information would similarly be under a court order to use

the Court should assume that DaVita and its experts will violate the District of Idaho's order. Opp. at 13. The cases EthiCare cites for this proposition, however, come from outside this jurisdiction and are inapposite. The court's reasoning in *In re Vitamins Antitrust Litigation*, 267 F. Supp. 2d 738 (S.D. Ohio 2003), was informed by the subpoenaed party's concern that its trade secrets could "fall into the hands of those defendants [that] are its direct competitors." *Id*. at 740. That is plainly not a risk here. And in *In re Stewart Title Co.*, No. H–09–247, 2009 WL 1708079 (S.D. Tex. June 17, 2009), the subpoenaed information was not relevant to the party's claims, *id*. at *2, which is not the case here. The inadequacy of protective order argument is really just a jab at DaVita's counsel and expert and a baseless insinuation that they will not obey the Idaho court's order. This Court should decline EthiCare's invitation to base its judicial decision making on the likelihood that DaVita's counsel and its expert will violate another federal court's order.

**B. EthiCare Has Not Established that Production of Its Communications with WinCo Would Be an Undue Burden.**

EthiCare makes much of the fact that DaVita has requested it to produce its communications with WinCo relating to dialysis policies, benefit determinations, or reimbursement, calling this aspect of DaVita's motion "abusive" and "absurd." Opp. at 14. To begin, EthiCare offers no argument that these Winco-EthiCare communications are not relevant. To justify its failure to quantify the scope and alleged burden of producing its communications with WinCo, EthiCare asserts that "[t]o determine the cost of searching for, gathering, reviewing, and producing communications with WinCo, EthiCare would first have to search for, gather, and review those communications to determine their responsiveness to this Request." *Id.* This

---

this information only for the purposes of the District of Idaho litigation. *See* Stipulated Protective Order, § 5.1.

argument is simply not credible. The Court has no doubt seen many instances where a party resisting discovery has come forward with specifics on e-mail counts, number of custodians, review time, and the like to support an argument of undue burden. *See, e.g.*, *In re Lazaridis*, 865 F. Supp. 2d 521, 525-26 (D.N.J. 2011) (party resisting subpoena provided estimates of the number of documents requested, the number of hours of full time work to gather the documents, and demonstrated that the cost was infeasible); *see also Biomet, Inc. v. Howmedica Ostenics Corp*., No. 14–6634, 2015 WL 1543221, at *4 (D.N.J. Apr. 7, 2015) ("[T]he Court finds that Howmedica has only set forth conclusory objections and claims that do not adequately demonstrate any undue burden it will incur in producing the requested information."). EthiCare has done no more than make conclusory allegations here. Moreover, DaVita reasonably believes EthiCare may be in possession of communications that WinCo has not produced. *See Mallinckrodt LLC v. Actavis Laboratories FL, Inc.*, No. 2:15-cv-3800, 2017 WL 5476801, *4 (D.N.J. Feb. 10, 2017) (noting that there "is no general rule that plaintiffs cannot seek nonparty discovery of documents likely to be in [a party's] possession . . . ."). Accordingly, DaVita should be entitled to enforce this portion of its Subpoena to EthiCare.

### C. An Order Compelling Production Is Appropriate Because EthiCare Has Not Completed Its Production of Documents Responsive to Requests 1 and 7-9.

EthiCare contends that DaVita's motion is moot with respect to Requests 1 and 7-9 because EthiCare has begun producing responsive documents. *See* Opp. at 17. To date, EthiCare has produced a total of fifteen (15) documents with a total of nineteen (19) pages. Because EthiCare had not made a complete production, however, or indicated when it will, an order compelling production should issue. DaVita served the Subpoena at issue on November 22, 2019. It is true that EthiCare did not have the names of the ten (10) dialysis patients initially when the Subpoena was served. DaVita's counsel provided EthiCare's counsel with the names

of the patients at issue on January 29, 2020—after the District of Idaho entered a confidentiality protective order. The key fact is that EthiCare has now had the information it needed to search for these patients' information for more than two months, but EthiCare has not completed production or given any definite forecast for when it will complete production. The fact that a party has begun production and its production is "underway" (*see* Opp. at 17) is no basis to avoid an order compelling production.

Accordingly, DaVita respectfully requests that this Court grant its motion to compel.

Dated: March 30, 2020

Respectfully submitted,

/s/ Jeffrey A. Carr
Jeffrey A. Carr
Jason J. Moreira
**PEPPER HAMILTON LLP**
301 Carnegie Center, Suite 400
Princeton, NJ 08543

James W. Boswell III
Jennifer S. Lewin
**KING & SPALDING LLP**
1180 Peachtree Street N.E.
Atlanta, GA 30309-3521

*Attorneys for Plaintiffs*