# EXHIBIT C
## to Statement of Supplemental Authority

Michael S. Horn (#002582005)
**ARCHER & GREINER, P.C.**
21 Main Street - Suite 353
Hackensack, New Jersey 07601-7095
(201) 342-6000
Attorneys for Non-Party Zelis Claims Integrity, Inc. (f/k/a Premiere Healthcare Exchange, Inc.
and formerly d/b/a PHX)

| | |
|---|---|
| THOMAS R. PETERSON, MD, P.C., <br><br> Plaintiff, <br><br> v. <br><br> CIGNA HEALTH AND LIFE INSURANCE COMPANY d/b/a CIGNA HEALTHCARE, WINE LIQUOR AND DISTILLERY WORKERS LOCAL 1-D, MAJOR MEDICINE PLAN, MAGNA CARE, OLGA MENDOZA, NATIONAL LABOR BENEFITS, <br><br> Defendants. | SUPERIOR COURT OF NEW JERSEY LAW DIVISION: BERGEN COUNTY <br><br> DOCKET NO.: BER-L-518-18 <br><br> CIVIL ACTION <br><br> **NOTICE OF CROSS-MOTION** <br> **(Oral Argument Requested)** |

**TO:**   All Counsel

**COUNSELORS:**

   **PLEASE TAKE NOTICE** that on Friday, **June 19, 2020** or as soon thereafter as counsel

may be heard, the undersigned, attorneys for Non-Party, Zelis Claims Integrity, Inc. (formerly

known as Premiere Healthcare Exchange Inc. and formerly d/b/a PHX), will move before the

Superior Court of New Jersey, Law Division, at the Bergen County Courthouse, 10 Main Street,

Hackensack, New Jersey 07601, for 1) an Order denying Plaintiff's Motion to Compel and 2) a

Protective Order preventing Plaintiff from seeking information that is not discoverable, which

contains trade secrets and proprietary information or information that is subject to confidentiality

restrictions including, but not limited to, Zelis Claims Integrity, Inc.'s pricing and internal

confidential and proprietary information; 3) quashing the subpoena issued by Plaintiff to Zelis

Claims Integrity, Inc., in part, to prevent the discovery of documents that are not discoverable, which are trade secrets and/or proprietary information or otherwise subject to confidentiality restrictions.

**PLEASE TAKE FURTHER NOTICE** that in support of this motion, Zelis Claims Integrity, Inc., will rely upon the annexed Brief, the Certification of Michael Chang, and the Certification of Michael S. Horn, Esq.

**PLEASE TAKE FURTHER NOTICE** that Zelis Claims Integrity, Inc. requests oral argument.

**PLEASE TAKE FURTHER NOTICE** that pursuant to <u>R.</u> 1:6-2(d) a proposed form of Order is enclosed.

**ARCHER & GREINER, P.C.**
Attorneys for Non-Party, Zelis Claims Integrity, Inc.
(formerly known as Premiere Healthcare Exchange
Inc. and formerly d/b/a PHX)

By:_____
      MICHAEL S. HORN

Dated: 6/11/20

Michael S. Horn (#002582005)
**ARCHER & GREINER, P.C.**
21 Main Street - Suite 353
Hackensack, New Jersey 07601-7095
(201) 342-6000
Attorneys for Non-Party Zelis Claims Integrity, Inc. (f/k/a Premiere Healthcare Exchange, Inc.
and formerly d/b/a PHX)

|  |  |
|---|---|
| THOMAS R. PETERSON, MD, P.C., <br><br> Plaintiff, <br><br> v. <br><br> CIGNA HEALTH AND LIFE INSURANCE COMPANY d/b/a CIGNA HEALTHCARE, WINE LIQUOR AND DISTILLERY WORKERS LOCAL 1-D, MAJOR MEDICINE PLAN, MAGNA CARE, OLGA MENDOZA, NATIONAL LABOR BENEFITS, <br><br> Defendants. | SUPERIOR COURT OF NEW JERSEY LAW DIVISION: BERGEN COUNTY <br><br> DOCKET NO.: BER-L-518-18 <br><br> CIVIL ACTION <br><br> **PROPOSED ORDER** |

**THIS MATTER** having been opened to the Court by Archer & Greiner, P.C. (Michael S.

Horn, Esq., appearing), attorneys for Non-Party, Zelis Claims Integrity, Inc. (formerly known as

Premiere Healthcare Exchange Inc. and formerly d/b/a PHX), on notice of cross-motion to all

counsel, for the entry of 1) an Order denying Plaintiff's Motion to Compel; 2) a Protective Order

preventing Plaintiff from seeking information that is not discoverable, which contains trade

secrets and proprietary information or information that is subject to confidentiality restrictions;

and 3) an Order quashing the subpoena issued by Plaintiff to Zelis Claims Integrity, Inc., in part,

to prevent the discovery of documents that are not discoverable, which are trade secrets and/or

proprietary information or otherwise subject to confidentiality restrictions; and the Court having

considered the submissions of the parties and having heard the arguments of counsel, and good

cause having been shown:

**IT IS** on this _____day of _____, 2020;

**ORDERED** Plaintiff's Motion to Compel is denied; and it is further

**ORDERED** Non-Party Zelis Claims Integrity, Inc.'s Cross-Motion for a Protective Order be and hereby is granted; and it is further

**ORDERED** that the subpoena issued by Plaintiff to Zelis Claims Integrity, Inc. is hereby quashed in part, to the extent that it seeks trade secrets and proprietary information or other information that is not discoverable; and it is further

**ORDERED** that Plaintiff is prevented from seeking from Non-Party Zelis Claims Integrity, Inc. information that is not discoverable such as, trade secrets and proprietary information including, but not limited to, Zelis Claims Integrity, Inc.'s pricing and internal confidential and proprietary information or information that is otherwise subject to confidentiality restrictions; and it is further

**ORDERED** that a copy of this Order shall be served upon all counsel of record within seven (7) days of the date of receipt hereof.

_____
HON. WALTER F. SKROD, J.S.C.

[ ] Opposed

[ ] Unopposed

**Michael S. Horn (#002582005)**
**ARCHER & GREINER, P.C.**
21 Main Street - Suite 353
Hackensack, New Jersey 07601-7095
(201) 342-6000
Attorneys for Non-Party Zelis Claims Integrity, Inc. (f/k/a Premiere Healthcare Exchange, Inc. and formerly d/b/a PHX)

| | |
|---|---|
| THOMAS R. PETERSON, MD, P.C., | SUPERIOR COURT OF NEW JERSEY LAW DIVISION: BERGEN COUNTY |
| Plaintiff, | DOCKET NO.: BER-L-518-18 |
| v. | CIVIL ACTION |
| CIGNA HEALTH AND LIFE INSURANCE COMPANY d/b/a CIGNA HEALTHCARE, WINE LIQUOR AND DISTILLERY WORKERS LOCAL 1-D, MAJOR MEDICINE PLAN, MAGNA CARE, OLGA MENDOZA, NATIONAL LABOR BENEFITS, | **CERTIFICATION OF MICHAEL CHANG** |
| Defendants. | |

I, Michael Chang, of full legal age, certify as follows:

1.    I am the Vice President of Negotiations and Claim Management for Non-Party Zelis Claims Integrity, LLC (f/k/a Zelis Claims Integrity, Inc., Premiere Healthcare Exchange, Inc. and formerly d/b/a PHX) in the above-captioned matter, and therefore have personal knowledge of the statements I make herein.

2.    I make this Certification in opposition to Plaintiff's Motion to Compel Discovery and in support of Non-Party Zelis Claims Integrity, Inc. (f/k/a Premiere Healthcare Exchange, Inc. and formerly d/b/a PHX)'s Cross Motion for a Protective Order.

DocuSign Envelope ID: 9DB6SDDF-05C5-4AE7-9DB0-58D84E25UF2D

3.      Zelis is a healthcare and financial technology company and market-leading provider of claims cost management and payments optimization solutions to price, pay, and explain healthcare claims to more than 700 payers and 1.5 million providers nationwide.

4.      Zelis works to generate network cost- and claims- costs savings for payers.

5.      To do so, Zelis uses the Zelis Intelligent Claims Routing Platform, a proprietary system that creates cost-effective provider access and maximize claim savings.

6.      Zelis also maximizes claims cost savings by finding provider errors, waste and abuse using its proprietary claims editing, specialty clinical audits, dialysis savings, hospital bill review and audit and out-of-network solutions.

7.      For out-of-network claims, Zelis relies on internal proprietary processes and data to support its claims negotiations.

8.      In conjunction with this case, Zelis submitted a "settlement proposal" to Plaintiff, which outlined a repriced claim for the out-of-network medical services he performed on Olga Mendoza and specified that Zelis is not financially responsible for payments to the Provider when it reprices out-of-network claims.

9.      On January 21, 2020, Zelis received a Subpoena Duces Tecum Ad Testificandum to Jessica Conlan, the Claims Associate who negotiated Plaintiff's claim, which demanded the production of various documents.

10.     The documents requested in Plaintiff's Subpoena include commercially sensitive, confidential and proprietary business information, and trade secrets including, but not limited to, documents reflecting, Zelis' pricing information, methodology, and negotiation strategies, which makes it competitive in the marketplace, and contracts containing confidential information, which are subject to extensive confidentiality restrictions.

BER-L-000518-18   06/11/2020 6:44:29 PM  Pg 3 of 5 Trans ID: LCV20201042008
DocuSign Envelope ID: 9DB65DDF-03C5-4AE7-9DB0-58D84E25DF2D

11.     Such information has been established at great expense to Zelis and its protection is of critical importance to Zelis.

12.     By way of example, the Zelis Intelligent Claims Routing Platform is a multifaceted system that has been developed over the past fifteen years.  It is a legacy system that relies on internal resources to process the claims Zelis receives.

13.     Likewise, any pricing information or methodology contained in contracts Zelis has with its clients is subject to extensive confidentiality restrictions.  Cigna and Zelis have agreed to keep these contracts confidential and they are heavily discussed and negotiated between Zelis and Cigna.

14.     Zelis' pricing information, methodology, and negotiation strategies are not generally known and not readily ascertainable, and for that reason, Zelis is able to capitalize on it to obtain an edge over competitors.

15.     Zelis also goes through great lengths to protect the information sought.  Few individuals know the particulars of how Zelis prices, reprices, or negotiates claims, Zelis employees are subject to confidentiality restrictions, and Zelis' contracts with clients are subject to extensive confidentiality restrictions.

16.     Because this information is integral to Zelis' business, a confidentiality agreement would not provide adequate safeguards against accidental disclosure.

17.     Zelis would be harmed if these documents or the information contained therein fell into the hands of competitors or customers.

18.     Disclosing all communications relating to the subject of the complaint or all communications with parties to the litigation would harm Zelis because it would include information implicating its pricing information, methodology, or negotiation strategy.  This would

BER-L-000518-18  06/11/2020 6:44:29 PM Pg 4 of 5 Trans ID: LCV20201042008
DocuSign Envelope ID: 9DB63DDF-03C5-4AE7-9DB0-38D64E26DF2D

impact the company's ability to compete in the marketplace since cost management and claims payment information is the core of Zelis' business and competitors would be able to replicate Zelis' proprietary pricing processes. It also includes information subject to confidentiality restrictions with clients.

19.     While Zelis does not have "pricing or repricing reports," disclosing any information related to our pricing would reveal proprietary information that is subject to confidentiality restrictions with clients.  This information makes Zelis competitive and highly sought after in the marketplace.

20.     Producing the contract between Zelis and Cigna would harm Zelis because it would reveal our confidential product and service pricing and other related business operations that would hinder our competitive advantage and negatively impact Zelis' relationship with an existing client, and others with which it is contracted.

21.     While Zelis does not have "writing or reports" on the payment as requested in Request 5, disclosing the electronic notes Zelis makes regarding negotiation would harm Zelis because it would allow competitors to replicate Zelis' claim negotiations process.

22.     Zelis does not maintain a manual and/or written standard used to re-price the surgery payment as requested in Request 6.

23.     Based upon the above, it would be extremely harmful for the information being sought by Plaintiff to be disseminated and therefore the subpoena should be quashed and a protective order to be issued.

I hereby certify that the foregoing statements made by me are true.  I understand that if any of the foregoing statements are willfully false, I am subject to punishment.

DocuSign Envelope ID: 9DB63DDF-03C5-4AE7-90B0-38D64E250F2D

_Michael Chang_
MICHAEL CHANG

DATED: 6/11/2020

218655198v6

Michael S. Horn (#002582005)
**ARCHER & GREINER, P.C.**
21 Main Street - Suite 353
Hackensack, New Jersey 07601-7095
(201) 342-6000
Attorneys for Non-Party Zelis Claims Integrity, Inc. (f/k/a Premiere Healthcare Exchange, Inc. and formerly d/b/a PHX)

| | |
|---|---|
| THOMAS R. PETERSON, MD, P.C.,<br><br>Plaintiff,<br><br>v.<br><br>CIGNA HEALTH AND LIFE INSURANCE COMPANY d/b/a CIGNA HEALTHCARE, WINE LIQUOR AND DISTILLERY WORKERS LOCAL 1-D, MAJOR MEDICINE PLAN, MAGNA CARE, OLGA MENDOZA, NATIONAL LABOR BENEFITS,<br><br>Defendants. | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION: BERGEN COUNTY<br><br>DOCKET NO.: BER-L-518-18<br><br>CIVIL ACTION |

---

## ZELIS' BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL AND IN SUPPORT OF ITS CROSS MOTION FOR A PROTECTIVE ORDER

---

ARCHER & GREINER, P.C.
21 Main Street, Suite 353
Court Plaza South, West Wing
Hackensack, NJ 07601-7095
(201) 342-6000
Attorneys for Non-Party, Zelis Claims Integrity, Inc. (formerly known as Premiere Healthcare Exchange Inc. and formerly dba PHX)

## I.     PRELIMINARY STATEMENT

With little justification or explanation, Plaintiff Thomas R. Peterson seeks an order compelling the discovery of documents containing non-party Zelis Claims Integrity, Inc.'s[1] (hereinafter "Zelis") trade secrets, proprietary information, and/or information that is otherwise subject to confidentiality restrictions in response to a Subpoena Duces Tecum Ad Testificandum.[2] Plaintiff's motion must be denied because his requests are either overly broad and seek information that is irrelevant to what remains of his Second Amended Complaint, is otherwise protected from disclosure, or does not exist.

Because Plaintiff seeks information is that is a trade secret, proprietary, or subject to confidentiality agreements, good cause exists to enter a protective order preventing discovery and to quash the subpoena to the extent it seeks this information.  The pricing and internal proprietary information Plaintiff requests is the very essence of Zelis' business, and Zelis actively prevents the disclosure of this information.  Moreover, a confidentiality agreement between the parties to the lawsuit is insufficient given the highly sensitive nature of the information as well as the fact that its accidental disclosure could impact Zelis' ability to compete in the claims pricing marketplace.  Thus, subpoena should be quashed and a protective order is warranted.

## II.    STATEMENT OF FACTS

### A.     Background

On January 23, 2018, Plaintiff Thomas R. Peterson, M.D., P.C filed the instant action against Defendants Cigna Health and Life Insurance Company, Zelis, Wine, Liquor and Distillery

---

[1]     Formerly known as Premiere Healthcare Exchange Inc. and formerly doing business as PHX.

[2]     Although Zelis is a non-party to this action, it nevertheless agreed to participate in discovery following the dismissal of Plaintiff's claims as to it.  Certification of Michael Horn, ¶5.

Workers Union, Local 1-D, Major Medical Plan (hereinafter "Wine"), and Magna Care to recover medical fees for services rendered on a patient.  Horn Cert., ¶3, Ex. A.  Zelis moved to dismiss Plaintiff's complaint pursuant to Rule 4:6-2(e), and the court granted that motion on October 23, 2018.  *Id.*  ¶4, Ex. B.

Following the dismissal of Plaintiff's claims as to it, Zelis agreed to participate in discovery.  In other words, after the Court dismissed Zelis from the case, the parties agreed to enter into a settlement agreement whereby Zelis agreed to provide the discovery that a non-party would normally be required to provide in a litigation.  It was clear that Zelis would only be required to provide discoverable information because it was contemplated by the parties that Zelis would be able to protect information from discovery that was not discoverable.  In other words, the settlement never permitted Plaintiff to receive all documents ever created by Zelis or its trade secrets.  Plaintiff thus understood the settlement agreement to require participation in discovery to the extent required by the law.  *Id.*  ¶5

On January 10, 2019, Plaintiff moved to amend his complaint to add two defendants: Defendant Olga Mendoza, the patient who received his medical services and Defendant Magna Care, the Administrator of Wine, Liquor and Distillery's medical plan and expand his causes of action against the remaining Defendants.  *Id.*  ¶6.  On March 11, 2019, approximately two weeks after he filed his First Amended Complaint, Plaintiff again moved to amend, seeking to add National Labor Benefits (hereinafter "NLB") as a defendant.  *Id.*  ¶7.

Since then, Cigna has settled with Plaintiff, Mendoza has defaulted, the claims against Magna Care have been dismissed, and many of the claims against both Wine and NLB have been dismissed as well.  *Id.*  ¶8, Ex. C-E.  Plaintiff's twelve-count Second Amended Complaint appears to have two counts remaining: Count 8 and Count 11.  *Id.*  ¶9.  Count 8 alleges Wine breached an

3

implied contract with Plaintiff to pay for the reasonable value of his services to Mendoza and Count 11 alleges NLB breached a purported settlement agreement by advising Wine not to pay the adjusted claim amount. *Id.* ¶10, Ex. F, ¶¶ 55-58; 66-68.

**B.** **The Subpoenas to Zelis**

On January 21, 2020, Plaintiff served a Subpoena Duces Tecum Ad Testificandum of Jessica Conlan, Representative for Zelis on counsel for Zelis. *Id.* ¶11. The subpoena demanded that Ms. Conlan produce seven categories of information. *Id.* On February 7, 2020, Zelis' counsel advised Plaintiff's counsel he was working with Zelis to secure dates for the deposition and documents responsive to the subpoena. At that time Zelis attempted to schedule the deposition for the last week in February. *Id.* ¶12

Zelis responded to the subpoena on February 13, 2020 and produced certain discoverable and responsive documents. *Id.* ¶13, Ex. G. Zelis nevertheless objected to the requests for a number of reasons, including, but not limited to the fact that the requests sought the production of documents that are protected by agreements with other parties, contain private and/or proprietary information and/or trade secrets, and/or subject to confidentiality restrictions. *Id.* Zelis planned to produce Ms. Conlan for a deposition on March 23, 2020. In fact, Zelis expended resources to respond to the subpoena and prepare for the deposition of Ms. Conlan. However, the deposition was adjourned by no fault of Zelis, but rather due to COVID-19. *Id.* ¶14.

On March 16, Zelis reached out to Plaintiff and tried to schedule the deposition, by way of a virtual deposition, shortly after it became clear that the practice was moving towards virtual depositions due to COVID-19. *Id.* ¶15, Ex. H.

Plaintiff and Zelis agreed to proceed with the deposition of Ms. Conlan on June 1, 2020. *Id.* ¶16. Thereafter, on May 5, 2020, Plaintiff served another Subpoena Duces Tecum Ad

4

Testificandum of Jessica Conlan on counsel for Zelis for a virtual deposition on June 1, 2020. *Id.* ¶17. Plaintiff requested that Ms. Conlan produce the same list of documents he sought in the January 21, 2020 subpoena. *Id.* ¶18. In response to this subpoena, counsel for Zelis informed Plaintiff that he planned to produce Ms. Conlan by way of Zoom for the deposition, but renewed the objections he made to the earlier subpoena. *Id.* ¶19.

On May 28, 2020, counsel for Plaintiff and Zelis conferred about the scope of the documents that are discoverable in response to the subpoena, and counsel for Zelis reiterated the fact that Zelis' pricing and internal proprietary information could not be disclosed. *Id.* ¶20. The two agreed the court would need to resolve the discoverability of this information, and therefore the two parties agreed that the most productive way to brief this issue would be for Plaintiff to file a motion to compel the information and in response, Zelis would move for a protective order and to quash the subpoena.[3] *Id.* ¶21. Plaintiff wanted to proceed with the deposition after the court ruled on these issues. *Id.* ¶22.

### C.   Zelis Claims Integrity, Inc. and the Information Sought

Zelis is a healthcare and financial technology company and market-leading provider of claims cost management and payments optimization solutions to price, pay, and explain healthcare claims to more than 700 payers and 1.5 million providers nationwide. Certification of Michael Chang, ¶3. Zelis works to generate network cost- and claims- costs savings for payers. *Id.* ¶4. To do so, Zelis uses the Zelis Intelligent Claims Routing Platform, a proprietary system that creates cost-effective provider access and maximize claim savings. *Id.* ¶5. Zelis also maximizes claims cost savings by finding provider errors, waste and abuse using its proprietary claims editing,

---

[3]      This agreement was designed to minimize the amount of motion papers in furtherance of judicial economy. Otherwise, there would be two sets of moving papers, two sets of opposition papers and two sets of replies, which would significantly increase the papers before this Court.

5

specialty clinical audits, dialysis savings, hospital bill review and audit and out-of-network solutions. *Id.* ¶6. For out-of-network claims, Zelis relies on internal proprietary processes and data to support its claims negotiations. *Id.* ¶7.

In conjunction with this case, Zelis submitted a "settlement proposal" to Plaintiff, which outlined a repriced claim for the out-of-network medical services he performed on Olga Mendoza and specified that Zelis is not financially responsible for payments to the Provider when it reprices out-of-network claims. *Id.* ¶8. On January 21, 2020, Zelis received a Subpoena Duces Tecum Ad Testificandum to Jessica Conlan, the Claims Associate who negotiated Plaintiff's claim, which demanded the production of various documents. *Id.* ¶9.

The documents requested in Plaintiff's Subpoena include commercially sensitive, confidential and proprietary business information, and trade secrets including, but not limited to, documents reflecting, Zelis' pricing information, methodology, and negotiation strategies, which makes it competitive in the marketplace, and contracts containing confidential information, which are subject to extensive confidentiality restrictions. *Id.* ¶10. Such information has been established at great expense to Zelis and its protection is of critical importance to Zelis. *Id.* ¶11.

By way of example, the Zelis Intelligent Claims Routing Platform is a multifaceted system that has been developed over the past fifteen years. It is a legacy system that relies on internal resources to process the claims Zelis receives. *Id.* ¶12.

Likewise, any pricing information or methodology contained in contracts Zelis has with its clients is subject to extensive confidentiality restrictions. Cigna and Zelis have agreed to keep these contracts confidential and they are heavily discussed and negotiated between Zelis and Cigna. *Id.* ¶13. Zelis' pricing information, methodology, and negotiation strategies are not

6

generally known and not readily ascertainable, and for that reason, Zelis is able to capitalize on it to obtain an edge over competitors. *Id.* ¶14.

Zelis also goes through great lengths to protect the information sought. Few individuals know the particulars of how Zelis prices, reprices, or negotiates claims, Zelis employees are subject to confidentiality restrictions, and Zelis' contracts with clients are subject to extensive confidentiality restrictions. *Id.* ¶15.

Because this information is integral to Zelis' business, a confidentiality agreement would not provide adequate safeguards against accidental disclosure. *Id.* ¶16. Zelis would be harmed if these documents or the information contained therein fell into the hands of competitors or customers. *Id.* ¶17.

Disclosing all communications relating to the subject of the complaint or all communications with parties to the litigation would harm Zelis because it would include information implicating its pricing information, methodology, or negotiation strategy. This would impact the company's ability to compete in the marketplace since cost management and claims payment information is the core of Zelis' business and competitors would be able to replicate Zelis' proprietary pricing processes. It also includes information subject to confidentiality restrictions with clients. *Id.* ¶18.

While Zelis does not have "pricing or repricing reports," disclosing any information related to Zelis' pricing would reveal proprietary information that is subject to confidentiality restrictions with clients. This information makes Zelis competitive and highly sought after in the marketplace. *Id.* ¶19.

Producing the contract between Zelis and Cigna would harm Zelis because it would reveal its confidential product and service pricing and other related business operations that would hinder

7

its competitive advantage and negatively impact Zelis' relationship with an existing client, and others with which it is contracted. *Id.* ¶20.

While Zelis does not have "writing or reports" on the payment as requested in Request 5, disclosing the electronic notes Zelis makes regarding negotiation would harm Zelis because it would allow competitors to replicate Zelis' claim negotiations process. *Id.* ¶21. Zelis does not maintain a manual and/or written standard used to re-price the surgery payment as requested in Request 6. *Id.* ¶22.

Based upon the above, it would be extremely harmful for the information being sought by Plaintiff to be disseminated and therefore the subpoena should be quashed and a protective order to be issued. *Id.* ¶23.

### III.     ARGUMENT

#### A.      The Court Must Deny Plaintiff's Motion to Compel

##### 1.      Plaintiff's requests seek information that is irrelevant to his remaining claims, otherwise entitled to protection, or does not exist

New Jersey's broad discovery rules are not limitless. *See Piniero v. Div. of State Police*, 404 N.J. Super. 194, 204 (App. Div. 2008); *see also K.S. v. ABC Professional Corp.*, 330 N.J. Super. 288, 291 (App. Div. 2000) ("[T]he scope of discovery is not infinite."). A party cannot use its discovery rights as a sword to "annoy, harass or burden a litigant." *Gensollen v. Pareja*, 416 N.J. Super. 585, 591 (App. Div. 2010) (citing R. 4:10-3).

To that end, a party can obtain discovery on any relevant matter not privileged so long as it "appears reasonably calculated to lead to the discovery of admissible evidence." *K.S.*, 330 N.J. Super. at 291 (quoting R. 4:10-2). Trade secrets constitute privileged information. N.J.R.E. 514. Confidential business information and proprietary information, while not privileged like trade

secrets, may nevertheless enjoy protection from disclosure during discovery. *See Capital Health Sys., Inc. v. Horizon Healthcare Servs., Inc.*, 230 N.J. 73, 80 (2017).

Plaintiff claims he is entitled to prevail on his motion to compel because "the information being requested is both relevant and germane."[4]  Pl's Br. 4.  This broad-sweeping claim ignores the complicated procedural history of his case, and what actually remains of his Second Amended Complaint.  Recall, after the dismissal Plaintiff's complaint as to Zelis and Magna, Plaintiff's settlement with Cigna, the default of Mendoza, and the partial dismissal of Plaintiff's complaint as to NLB and Wine, it appears only two counts remain: Count 8 and Count 11.  Count 8 alleges Wine breached an implied contract with Plaintiff to pay for the reasonable value of his services and Count 11 alleges NLB breached the purported settlement agreement by advising Wine not to pay the repriced amount.

In light of the current state of Plaintiff's Second Amended Complaint, Plaintiff's requests are either overly broad, not relevant, or seek information that is entitled to protection.  By way of background, Plaintiff requested the following:

> 1.  Any and all communications, including emails, correspondence, text messages that in any way relate to the subject of the complaint.
>
> 2.  Any and all communications between PHX and any party to the litigation, including but not limited to PHX, Wine Liquor and Distillery Workers Local, Cigna Health and Life Insurance, MagnaCare and National Labor Benefits, including emails, correspondence, text messages that in any way relate to the subject of the complaint.
>
> 3.  Any pricing or repricing reports performed by PHX and/or Cigna regarding Olga Mendoza.

---

[4]     It is not entirely clear whether Plaintiff seeks all information requested in his subpoena or only information related to pricing, as that is the only specific reference Plaintiff makes in his brief and the subject of counsel's May 28, 2020 conference. *See* Pl's Br. 3 ("It is necessary for Plaintiff to question how Zelis priced Plaintiff[']s claim . . . .").

    4.     A copy of any Contract between PHX, Cigna and Wine.

    5.     Any writings or reports, either electronic or manual that references any facet of the surgery or payment.

    6.     A copy of the manual and/or standard used to re-price the surgery payment.

    7.     Any and all communications, including emails, correspondence, text messages that in any way relate to the subject of the complaint between PHX, Cigna, Wine and MagnaCare.

[Certification of Frank DeVito, Ex. B.]

Plaintiff's first request is overly broad and not reasonably calculated to lead the discovery of admissible evidence. It also seeks the production of documents that are protected by the attorney-client privilege, the work product doctrine, and/or agreements with other parties. Moreover, the request seeks information that contains trade secrets and/or other confidential and proprietary information that is likewise entitled to protection from discovery.

The same can be said about Plaintiff's second and seventh requests, which appear to request the same information. Not only is the request overly broad, as it seeks information from entities, like Cigna and Magna Care, that are no longer present in the litigation, but it requests information that contains trade secrets, proprietary business information, and/or is subject to confidentiality restrictions. In any event, Zelis informed Plaintiff, in responding to Plaintiff's second request, "the only email in [Zelis'] possession occurred after the alleged occurrence and therefore the email is not discoverable." Horn Cert, ¶13, Ex. G. Zelis also provided documents responsive to Plaintiff's seventh request. *Id.*

Plaintiff's third, fourth, and sixth requests seek information that is not relevant to Plaintiff's remaining claims since Counts 8 and 11 stem not from how non-party Zelis priced the claim in the first place, but from why Wine did not pay the repriced claim and why NLB purportedly advised Wine not to pay it. Moreover, Zelis does not have "pricing or repricing reports" or a manual and/or

written standard used to re-price as Plaintiff requests.  Chang Cert. ¶19, 22.  To the extent Plaintiff seeks information regarding Zelis' pricing, such information contains trade secrets, proprietary business information, and/or information that is protected by agreements with clients.  Zelis' contract with Cigna likewise contains such information and those parties have agreed to keep it confidential.

Finally, with respect to Plaintiff's fifth request, Zelis does not have writings and/or reports on the payment.  Chang Cert. ¶21.

Plaintiff is therefore not entitled to the discovery he seeks because it is either nonexistent, already supplied, irrelevant to his remaining claims, or otherwise protected.

### 2.    Zelis has complied with, and not breached, the terms of the settlement agreement

As an initial matter. Zelis was dismissed from this case by this Court based upon the fact that the claims against Zelis had no merit.  However, to avoid re-litigating that issue, Zelis agreed to provide discovery as a third party.  Zelis has acted in good faith to provide discovery, as a third party, in this case.

Plaintiff nevertheless argues "the settlement agreement between the parties mandates that the requested material and testimony of Zelis employees be permitted."  Pl's Br. 2.  Contrary to Plaintiff's assertion, Zelis has complied with the terms of the settlement agreement.

It is well established that courts enforce an agreement "according to its terms, giving those terms 'their plain and ordinary meaning.'"  *GMAC Mtg., LLC v. Willoughby*, 230 N.J. 172, 186 (2017) (quoting *Pacifico v. Pacifico*, 190 N.J. 25 (2007)).

In relevant part, the agreement provides:

> 2.    Zelis agrees that it will respond in a timely manner as to any discovery demands served by Peterson and to produce *discoverable* documents sought therein.

11

3.     Zelis also agrees to produce any witnesses in Zelis' control at a deposition or trial in this matter who would be required to be produced under the New Jersey Court Rules . . .

. . . .

4.     Zelis also agrees to respond in a timely matter to subpoenas for the production of documents.

[DeVito Cert., Ex. A (emphasis added).]

Here, Zelis has responded to Plaintiff's discovery demands contained in the Subpoena Duces Tecum Ad Testificandum of Jessica Conlan.  Horn Cert, ¶13, Ex. G.   Zelis produced discoverable documents sought in Schedule A of the subpoena.  *Id.*  In fact, Zelis expended legal fees preparing its witness and complying with the subpoena. *Id.* ¶14.  Clearly, Zelis has abided by the settlement agreement.[5]

The instant dispute exists because the parties disagree as to whether the documents requested pertaining to pricing and proprietary information are discoverable in the first place.  To the extent they are not, as Zelis advances, the settlement agreement does not require their production since the settlement agreement only requires Zelis to produce discoverable documents. Finally, contrary to Plaintiff's assertion, Zelis has agreed to produce a corporate representative. *See id.* ¶¶ 14, 16, 19.

Plaintiff's argument on this point therefore lacks any merit.

### 3.     Plaintiff is not entitled to attorney's fees

Plaintiff last argues that "[t]he actions of Asani as outlined . . . rise[] to the standard necessary for the court to impose sanctions in the form of payment of attorney['s] fees and costs."

---

[5]     Furthermore, the meritless claim that there is a breach of the settlement agreement is not properly before this Court.  There is no cause of action asserted against Zelis, and Plaintiff has not filed a new lawsuit regarding setting forth this baseless allegation.

12

Pl's Br. 4.  Preliminarily, it is unclear who Asani is and s/he is not one of Zelis' attorneys.  Even

if properly directly at counsel for Zelis, Plaintiff's request for sanctions must be denied.

Rule 4:23-1(c), which governs sanctions in the context of motions to compel, "is limited

in its scope."  *Segal v. Lynch*, 211 N.J. 230, 257 (2012).  "The *Rule* is not a source of authorization

to courts to award fees as a sort of generally available sanction for discovery violations, but instead

is confined by its terms to very specific kinds of discovery violations."  *Id.*  Under the rule, the

award of fess is not proper if the "the opposition to the motion was substantially justified or that

other circumstances make an award of expenses unjust."  R. 4:23-1(c).  An award of fees in the

context of a discovery motion is not proper where "there [is] a good faith dispute between the

attorneys."  *Edison Corp. v. Secaucus Town*, 17 N.J. Tax 178, 186 (Tax Ct. 1998).

Indeed, is well established that "New Jersey has a strong policy disfavoring shifting of

attorneys' fees."  *N. Bergen Rex Transp., Inc. v. Trailer Leasing Co.,* 158 N.J. 561, 570 (1999)

(citing *McGuire v. City of Jersey City*, 125 N.J. 310, 326-27 (1991)); *see also McGuire*, 167 N.J.

at 326 (recognizing that "fee awards are in derogation of the usual policy applied by New Jersey

Courts").  Notwithstanding this strong policy, a prevailing party can recover attorneys' fees "if

they are expressly provided for by statute, court rule, or contract."  *Litton Indus., Inc. v. IMO*

*Indus., Inc.,* 200 N.J. 372, 385 (2009) (internal quotation marks omitted) (quoting *Packard-*

*Bamberger & Co., Inc. v. Collier*, 167 N.J. 427, 440 (2001)).

Here, opposition to Plaintiff's motion to compel is substantially justified as Zelis has a

good faith dispute as to the discoverability of documents that contain trade secrets, proprietary

information, confidential business information, and/or are subject to confidentiality agreements

with other parties.  As Plaintiff concedes, "[t]he threshold for the use of the court's inherent power

to sanction a party is high."  Pl's Br. 4.  Zelis' counsel's conduct, which includes producing

discoverable documents and agreeing to produce Zelis' corporate representative, does not cross that high threshold. Even assuming Plaintiff intended to seek sanctions against counsel for Zelis, that request should be denied.

In addition, there is no provision in the settlement agreement that would permit the shifting of fees in this case. *See Litton Indus., Inc. v. IMO Indus., Inc.*, 200 N.J. at 385. Therefore, to the extent Plaintiff requests fee shifting, that request has no merit.

**B.      The Court Should Enter a Protective Order Limiting the Scope of Discovery**

**1.      Standard for entering a protective order**

In relevant part, <u>Rule</u> 4:10-3 provides "[o]n motion by a party or by the person from whom discovery is sought, the court, for good cause shown or by stipulation of the parties, may make any order that justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." In granting such protection, a court may order, among other things, "[t]hat the discovery not be had;" "[t]hat certain matters not be inquired into, or that the scope of the discovery be limited to certain matters;" or "[t]hat a trade secret or other confidential research, development, or commercial information not be disclosed or be disclosed only in a designated way." <u>R.</u> 4:10-3(a), (d), (g).

In assessing whether the moving party has shown good cause, the court considers the following nine factors:

> 1.      The nature of the lawsuit and the issues raised by the pleadings;
>
> 2.      The substantive law likely to be applied in the resolution of the issues raised in the pleadings;
>
> 3.      The kind of evidence which could be introduced at the trial, and the likelihood of it being discovered by the pretrial discovery procedure which is the subject of the application for a protective order;

    4.      Whether trade secrets, confidential research, or commercial information are sought in the discovery procedure employed, whether they are material and relevant to the lawsuit, and whether a protective order will insure appropriate confidentiality;

    5.      Whether the pretrial discovery seeks confidential information about persons who are not parties to the lawsuit;

    6.      Whether the pretrial discovery sought involves privileged material;

    7.      Whether the pretrial discovery sought relates to matters which are or not in dispute;

    8.      Whether the party seeking discovery already has the materials sought; and

    9.      The burden or expense to the party seeking the protective order.

[*Catalpa Inv. Grp., Inc. v. Franklin Twp. Zoning Bd. of Adjustment*, 254 N.J. Super. 270, 179-80 (Law. Div. 1991) (citations and footnote omitted).]

### 2.      Good cause exists to enter a protective order

New Jersey courts have recognized that protective orders may be necessary to protect the disclosure of confidential materials. *See Dixon v. Rutgers, the State University of New Jersey*, 110 N.J. 432, 456-59 (1988); *Alk Assocs., Inc. v. Multimodal Applied Sys., Inc.*, 276 N.J. Super. 310 (App. Div. 1994) (endorsing view that "the trial judge is provided under R. 4:10-3(g) with 'discretion to take whatever steps are necessary to protect defendant's confidential documents, while still permitting plaintiff the right of discovery'" (quoting *Martin v. Educ. Testing Serv.*, 179 N.J. Super. 317, 329 (Ch. Div. 1981), *overruled on other grounds, Brady v. Dep't of Personnel*, 149 N.J. 244 (1994))).

Good cause for entering a protective order exists if "the information sought is a trade secret or is otherwise confidential or proprietary" and "secrecy outweighs the presumption of discoverability." *Capital Health Sys., Inc.*, 230 N.J. at 80 (first citing R. 4:10-3; then quoting

*Hammock by Hammock v. Hoffmann-LaRoche*, 142 N.J. 356, 369 (1995)).  The New Jersey Trade

Secrets Act, N.J.S.A. 56:15-1 to -9, in relevant part, defines a trade secret as:

> information, held by one or more people, without regard to form . .
> . that:
>
> > (1) Derives independent economic value, actual or potential,
> > from not being generally known to, and not being readily
> > ascertainable by proper means by, other persons who can obtain
> > economic value from its disclosure or use; and
> >
> > (2) Is the subject of efforts that are reasonable under the
> > circumstances to maintain its secrecy.

[N.J.S.A. 56:15-2.]

Information that does not constitute a trade secret may nevertheless be entitled to protection if it

is confidential and proprietary.  *Capital Health Sys., Inc.*, 230 N.J. at 80.

Our courts recognize that pricing information can constitute a trade secret or can be

proprietary and confidential.  *Trump's Castle Assocs. v. Tallone*, 275 N.J. Super. 159, 162 (App.

Div. 1994) (recognizing "[a] trade secret can also relate to other aspects of business operations

such as pricing" (quoting Restatement (Third) of Unfair Competition § 39, cmt. d (Am. Law. Inst.

1995))); *see also Platinum Mgmt., Inc. v. Dahms*, 285 N.J. Super. 274, 295-96 (Law Div. 1995)

(finding information regarding plaintiff's "mark-up structure, merchandising plans, sales

projections and product strategies . . . is clearly confidential and proprietary").  Guarding Zelis'

pricing information, methodology, and negotiation strategy is even more critical because that is

what makes Zelis a market-leading provider in claims cost management and payment optimization.

As set forth in greater detail above, Plaintiff's discovery requests are overly broad, seek

irrelevant information, or otherwise attempt to elicit information that is protected.  Good cause

exists to enter a protective order preventing the production of documents to the extent they contain

anything regarding Zelis' pricing information or methodology, which is a trade secret, confidential business information, and/or proprietary or otherwise subject to confidentiality restrictions.

Assuming Requests 1, 2, and 7 were not overly broad and reasonably calculated to lead to the discovery of admissible evidence, they seek information that implicates how Zelis prices and negotiates its claims. Such information should be protected from discovery as a trade secret since it is not readily known nor ascertainable through reasonable means, and Zelis derives economic benefit from it for that reason. Chang Cert., ¶14. For example, Zelis Intelligent Claims Routing Platform is a multifaceted system that has been developed over the past fifteen years. *Id.* ¶12. Moreover, few employees know the particulars of how Zelis prices, reprices, or negotiates claims, Zelis employees are subject to confidentiality restrictions, and Zelis' contracts with clients are subject to extensive confidentiality restrictions. *Id.* ¶15.

Plaintiff's third request is also improper as it is vague and seeks information that is not in Zelis' possession. Zelis does not have "pricing or repricing reports." *Id.* ¶19. However, to the extent Plaintiff seeks information regarding Zelis' pricing, that information is proprietary as it makes Zelis competitive and unique in the marketplace and is protected from disclosure through confidentiality restrictions.

Nor should discovery be had on Plaintiff's fourth request, which seeks "[a] copy of any [c]ontract" between Zelis and Cigna, who is also no longer part of this litigation. Preliminarily, the scope of Plaintiff's request is overly broad as it refers to "any" contract between these entities. Even if the request was reasonably calculated, the contract contains confidential terms reflecting trade secrets and/or proprietary information that the parties have agreed to keep confidential. *See Communications Workers of America v. Rousseau*, 417 N.J. Super. 341, 361 (App. Div. 2010) (finding investment agreements with confidentiality restrictions constituted trade secrets and

17

proprietary financial information not subject to disclosure under the Open Public Records Act); *Catalpa Inv. Grp., Inc.*, 254 N.J. Super. at 179-80 (recognizing significance of requesting confidential information from non-party); *Berrie v. Berrie*, 188 N.J. Super. 274, 285-87 (Ch. Div. 1983) (finding non-party not required to provide discovery of confidential business information where that information was not essential to the Plaintiff's case). Producing the contract between Zelis and Cigna would harm Zelis because it would reveal its confidential product and service pricing and other related business operations that would hinder its competitive advantage and negatively impact Zelis' relationship with an existing client, and others with which it is contracted. Chang Cert., ¶20. It should therefore be protected from disclosure here.

As to Plaintiff's fifth request and six requests, Zelis informed Plaintiff that it did not have documents responsive to those requests. To the extent Plaintiff's sixth request could be construed to request how Zelis re-priced the surgery payment, that information is likewise protected from discovery since Zelis' pricing methodology is a trade secret.

Moreover, information regarding Zelis' pricing or repricing methodology or negotiation strategy is not "material and relevant" to Plaintiff's lawsuit, which, following various orders to dismiss, asserts claims against Wine and NLB for breach of contract. How Zelis ultimately arrived at the repriced claim amount is not relevant to whether Wine or NLB may or may not have breached an obligation to pay for the services Plaintiff rendered to Mendoza.

Further justifying the need for a protective order is the fact that Zelis is a non-party to Plaintiff's lawsuit. *See Berrie v. Berrie*, 188 N.J. Super. 274, 285-87 (Ch. Div. 1983). Given Zelis' non-party status, it should not be compelled to disclose information relating its pricing methodology or negotiation strategy that is a trade secret, proprietary, or otherwise subject to confidentiality restrictions, where that information is not material or relevant to Plaintiff's claims.

18

Finally, a confidentiality agreement between the parties is insufficient to protect against the accidental dissemination of Zelis' information.  Chang Cert., ¶16.  As set forth above, information regarding pricing is integral to Zelis' business.  Indeed, pricing and repricing claims *is* Zelis' business.  Zelis would be significantly harmed if that information or if its contract with Cigna was accidentally released to the public.  For example, if disclosed, competitors would be able to replicate Zelis' proprietary pricing processes, thereby impacting Zelis' ability to compete in the marketplace and offer a unique platform to clients.

Therefore, a protective order preventing discovery on the information Plaintiff seeks is warranted and a confidentiality agreement between the parties is insufficient to protect against accidental dissemination of Zelis' information.

## IV.    CONCLUSION

For the foregoing reasons, Zelis respectfully requests that the Court deny Plaintiff's Motion to Compel and grant Zelis' Cross-Motion for a Protective Order and to quash the subpoena.

Respectfully submitted,

**ARCHER & GREINER, P.C.**
Attorneys for Non-Party, Zelis Claims
Integrity Inc. (formerly known as Premiere
Healthcare Exchange Inc. and formerly dba
PHX)

By:_____
         Michael S. Horn, Esq.

Dated:  6/11/20

19

**Michael S. Horn (#002582005)**
**ARCHER & GREINER, P.C.**
21 Main Street - Suite 353
Hackensack, New Jersey 07601-7095
(201) 342-6000
Attorneys for Non-Party Zelis Claims Integrity, Inc. (f/k/a Premiere Healthcare Exchange, Inc.
and formerly d/b/a PHX)

| | |
|---|---|
| THOMAS R. PETERSON, MD, P.C., | SUPERIOR COURT OF NEW JERSEY LAW DIVISION: BERGEN COUNTY |
| Plaintiff, | DOCKET NO.: BER-L-518-18 |
| v. | CIVIL ACTION |
| CIGNA HEALTH AND LIFE INSURANCE COMPANY d/b/a CIGNA HEALTHCARE, WINE LIQUOR AND DISTILLERY WORKERS LOCAL 1-D, MAJOR MEDICINE PLAN, MAGNA CARE, OLGA MENDOZA, NATIONAL LABOR BENEFITS, | **CERTIFICATE OF SERVICE** |
| Defendants. | |

I, Amy E. Pearl, Esquire, hereby certify that on June 11, 2020, a copy of (1) Non-Party

Zelis Claims Integrity, Inc.'s Notice of Cross-Motion for a Protective Order and to Quash the

Subpoena; (2) its Brief in Opposition to Plaintiff's Motion to Compel and in Support of its

Cross-Motion; (3) the Certification of Michael S. Horn, Esq.; (4) the Certification of Michael

Chang; and (5) a Proposed Order was filed via the eCourts and forwarded to the following via

Federal Express:

> The Honorable Walter F. Skrod
> Bergen County Courthouse
> 10 Main Street, 4th Floor Rotunda
> Hackensack, NJ 07601

A copy of same was forwarded via electronic filing and e-mail to the following counsel

of record:

Francis J. DeVito, Esquire
fdevito@fdevitolaw.com

Eric E Wohlforth, Esquire
ewohlforth@gibbonslaw.com

Charlotte M. Howells, Esquire
chowells@gibbonslaw.com

Thomas Justin Chapman, Esquire
chapmanj@litchfieldcavo.com

Joseph George Harraka, Esquire
jgharraka@becker.legal

Andrew D. Borg, Esquire
andrewborg@msn.com


*/s/ Amy Pearl*
AMY E. PEARL, ESQ.

Dated: 6/11/20

**Michael S. Horn (#002582005)**
**ARCHER & GREINER, P.C.**
21 Main Street - Suite 353
Hackensack, New Jersey 07601-7095
(201) 342-6000
Attorneys for Non-Party Zelis Claims Integrity Inc. (f/k/a Premiere Healthcare Exchange, Inc. and formerly d/b/a PHX)

| | |
|---|---|
| THOMAS R. PETERSON, MD, P.C.,<br><br>    Plaintiff,<br><br>    v.<br><br>CIGNA HEALTH AND LIFE INSURANCE COMPANY d/b/a CIGNA HEALTHCARE, WINE LIQUOR AND DISTILLERY WORKERS LOCAL 1-D, MAJOR MEDICINE PLAN, MAGNA CARE, OLGA MENDOZA, NATIONAL LABOR BENEFITS,<br><br>    Defendants. | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION: BERGEN COUNTY<br><br>DOCKET NO.: BER-L-518-18<br><br>CIVIL ACTION<br><br>**CERTIFICATION OF MICHAEL S. HORN, ESQ.** |

I, Michael S. Horn, Esq. an attorney-at-law of the State of New Jersey, certify as follows:

1.     I am an attorney-at-law of the State of New Jersey and a Partner with the firm Archer & Greiner, P.C., counsel for Non-Party Zelis Claims Integrity, Inc. (f/k/a Premiere Healthcare Exchange, Inc. and formerly d/b/a PHX) in connection with the above-captioned action.  I am fully familiar with the facts and circumstances of this case.

2.     I submit this certification in opposition to Plaintiff, Thomas R. Peterson, MD, P.C.'s motion to compel discovery and in support of Zelis' cross-motion for a protective order.

3.     On January 23, 2018, Plaintiff filed the instant action against Defendants Cigna Health and Life Insurance Company, Zelis Claims Integrity Inc (hereinafter "Zelis"), Wine, Liquor and Distillery Workers Union, Local 1-D, Major Medical Plan (hereinafter "Wine"), and Magna

1

Care to recover medical fees for services rendered on a patient.  A true and accurate copy of Plaintiff's Complaint is attached hereto as Exhibit A.

4.     Zelis moved to dismiss Plaintiff's complaint pursuant to Rule 4:6-2(e), and the Court granted that motion on October 23, 2018.  A true and accurate copy of the Court's order dismissing Plaintiff's Complaint as to Zelis is attached hereto as Exhibit B.

5.     Following the dismissal of Plaintiff's claims as to it, Zelis agreed to participate in discovery.  In other words, after the Court dismissed Zelis from the case, the parties agreed to enter into a settlement agreement whereby Zelis agreed to provide the discovery that a non-party would normally be required to provide in a litigation.  It was clear that Zelis would only be required to provide discoverable information because it was contemplated by the parties that Zelis would be able to protect information from discovery that was not discoverable.   In other words, the settlement never permitted Plaintiff to receive all documents ever created by Zelis or its trade secrets.  Plaintiff thus understood the settlement agreement to require participation in discovery to the extent required by the law.

6.     On January 10, 2019, Plaintiff moved to amend his complaint to add two defendants: Defendant Olga Mendoza, the patient who received his medical services and Defendant Magna Care, the Administrator of Wine, Liquor and Distillery's medical plan, and expand his causes of action against the remaining defendants.

7.     On March 11, 2019, approximately two weeks after he filed his First Amended Complaint, Plaintiff again moved to amend his complaint and sought to add National Labor Benefits (hereinafter "NLB") as a defendant.

8.     Since then, Cigna has settled with Plaintiff, Mendoza has defaulted, the claims against Magna Care have been dismissed, and many of the claims against both Wine and NLB

2

have been dismissed as well.  True and accurate copies of the Court's orders dismissing Magna Care, Wine, and NLB are attached hereto as Exhibits C, D, and E.

9.      Plaintiff's twelve-count Second Amended Complaint appears to have two counts remaining: Count 8 and Count 11.

10.      Count 8 alleges Wine breached an implied contract with Plaintiff to pay for the reasonable value of his services to Mendoza and Count 11 alleges NLB breached the purported settlement agreement.  A true and accurate copy of Plaintiff's Second Amended Complaint is attached hereto as Exhibit F.

11.      On January 21, 2020, Plaintiff served a Subpoena Duces Tecum Ad Testificandum of Jessica Conlan, Representative for Zelis on counsel for Zelis.  The subpoena demanded that Ms. Conlan produce seven categories of information.

12.      On February 7, 2020, I advised Plaintiff's counsel I was working with Zelis to secure dates for the deposition and documents responsive to the subpoena.  At that time I attempted to schedule the deposition for the last week in February.

13.      Zelis responded to the subpoena on February 13, 2020 and produced certain discoverable responsive documents.  Zelis nevertheless objected to the requests for a number of reasons, including, but not limited to the fact that the requests sought the production of documents that are protected by agreements with other parties, contain private and/or proprietary information and/or trade secrets, and/or subject to confidentiality restrictions.  A true and accurate copy of Zelis' response to Plaintiff's subpoena is attached hereto as Exhibit G.

14.      Zelis planned to produce Ms. Conlan for a deposition on March 23, 2020.  In fact, Zelis expended resources to respond to the subpoena and prepare for the deposition of Ms. Conlan. However, the deposition was adjourned by no fault of Zelis, but rather due to COVID-19.

3

15.     On March 16, Zelis reached out to Plaintiff and tried to schedule the deposition, by way of a virtual deposition, shortly after it became clear that the practice was moving towards virtual depositions due to COVID-19. A true and accurate copy of relevant emails are annexed hereto as Exhibit H.

16.     Plaintiff and Zelis agreed to proceed with the deposition of Ms. Conlan on June 1, 2020.

17.     On May 5, 2020, Plaintiff served another Subpoena Duces Tecum Ad Testificandum of Jessica Conlan on counsel for Zelis for a virtual deposition on June 1, 2020.

18.     Plaintiff requested that Ms. Conlan produce the same list of documents he sought in the January 21, 2020 subpoena.

19.     In response to this subpoena, I informed Plaintiff that Zelis planned to produce Ms. Conlan by way of Zoom for the deposition, but renewed the objections I made to the earlier subpoena.

20.     On May 28, 2020, I spoke with Plaintiff's counsel about the scope of the documents that are discoverable in response to the subpoena, and I reiterated the fact that Zelis' pricing and internal proprietary information could not be disclosed.

21.     The parties agreed the court would need to resolve the discoverability of this information.  Specifically, the parties agreed that the most productive way to brief this issue would be for Plaintiff to file a motion to compel the information and in response, Zelis would move for a protective order and to quash the subpoena.  The parties clearly agreed this was a complex issue that needed to be resolved by a court.

22.     Plaintiff wanted to proceed with the deposition after the court ruled on these issues.

4

23.     As a result of the above, I was surprised that Plaintiff is taking the position that Zelis has not been cooperating or is in violation of the settlement agreement.  Zelis has worked in good faith to provide discovery as a non-party.  The fact that there is a complex legal issue regarding the disclosure of trade secrets and proprietary information does not take away from the fact that Zelis has acted in good faith during the entire process.

I hereby certify that the foregoing statements made by me are true.  I understand that if any of the foregoing statements are willfully false, I am subject to punishment.

_____

MICHAEL S. HORN, ESQ.


DATED:  6/11/20

# Exhibit A

EDWARD S. ZIZMOR ESQ. Attorney ID# 016631976
60 COURT STREET
HACKENSACK, NEW JERSEY 07601
TEL: 201-342-6222
Attorney for Plaintiff

---

| | |
|---|---|
| THOMAS R. PETERSON MD PC | SUPERIOR COURT OF NEW JERSEY |
| | LAW DIVISION: BERGEN COUNTY |
| Plaintiff, | |
| | |
| vs. | DOCKET NO. |
| | |
| CIGNA HEALTH AND LIFE | CIVIL ACTION |
| INSURANCE COMPANY | CONTRACT |
| d/b/a CIGNA HEALTH CARE, | COMPLAINT |
| PHX, WINE LIQUOR AND DISTILLERY | |
| WORKERS LOCAL 1-D, MAJOR | |
| MEDICAL PLAN, MAGNA CARE | |
| | |
| Defendants, | |

---

Plaintiff, THOMAS R. PETERSON MD PC., with an office located at 140

Prospect Avenue, Hackensack, New Jersey 07601, complaining of the Defendant

says:

## THE PARTIES

1.    Plaintiff THOMAS R. PETERSON MD PC, (hereinafter called

"PETERSON") is a provider of medical services duly licensed and existing under the

laws of the State of New Jersey.

2.    Defendant CIGNA HEALTH AND LIFE INSURANCE COMPANY d/b/a

(hereinafter called "CIGNA") is an insurance company licensed to do business in the

State of New Jersey.

3.    Defendant PHX is a cost management company licensed to do business in the State of New Jersey and located at 2 Crossroads Drive, Bedminster NJ 07921.

4.    Defendant WINE, LIQUOR and DISTILLERY WORKERS UNION, LOCAL 1-D, MAJOR MEDICAL PLAN., (hereinafter called "WINE") is a union with an insurance plan for its members it is located in Brooklyn, NY.

5.    Defendant MAGNA CARE is an insurance company licensed to do business in the State of New Jersey.

## THE FACTS

6.    Plaintiff PETERSON is an out of network physician at all times set forth in this action.

7.    Olga Mendoza at all times had medical coverage through Defendant WINE.

8.    The insurance plan of WINE, which covered Olga Mendoza, was administrated initially by CIGNA.

9.    On April 28, 2016, CARE ALLIES, acting upon approval of CIGNA and WINE, authorized Plaintiff PETERSON to perform surgery on OLGA MENDOZA.

10.    On June 2, 2016, Plaintiff PETERSON performed surgery on Olga

Mendoza.

11.     Plaintiff then submitted his bill of $222,539.00 to CIGNA, as administrator of Olga Mendoza's insurance plan with WINE.

12.     Defendant CIGNA then engaged Defendant PHX to submit a payment settlement proposal to Plaintiff PETERSON.

13.     The settlement proposal set forth that in consideration of Plaintiff PETERSON, lowering his fee from $222,539.00, and agreeing not to balance bill the patient, CIGNA would have payment of $140,000.00 paid to Peterson.

14.     This settlement proposal was made with the approval of CIGNA, on behalf of Defendant WINE, which would pay the $140,000.00.

15.     Plaintiff PETERSON relied on this representation, and had its office manager sign the agreement on July 11, 2016, which was then faxed back to PHX.

16.     Plaintiff PETERSON would not have signed this agreement, but for the representation that $140,000.00 would be paid.

17.     Defendant WINE, thereafter, fired Defendant CIGNA, as Administrator and hired Defendant MAGNA CARE, as Administrator of WINE'S Medical Plan.

18.     Defendant MAGNA CARE then attempted to revoke the settlement agreement, by advising WINE not to comply with its terms.

19.     WINE then based on MAGNA CARE'S advice paid Plaintiff $21,079.10 but failed and refused to pay $118,921.90.

20     The amount of $118,921.90 is due and owing.

## FIRST COUNT- BREACH OF CONTRACT

21.     Plaintiff repeats and realleges paragraphs 1-20.

22.     Defendant CIGNA,as Administrator of WINE authorized PHX to enter into a written agreement with PETERSON wherein PETERSON reduced his fee for medical services on behalf of WINE'S insured Olga Martinez from $222,539.00 TO $140,000.00 and agree not to balance bill.

23.     CIGNA, PHX and WINE failed to comply with contract and only paid Plaintiff $21,079.10.

24.     CIGNA, PHX and WINE refused to pay Plaintiff $118,921.90.

WHEREFORE, Plaintiff demands judgment against CIGNA, PHX and WINE in the sum of $118,921.90 along with court costs and fees and disbursements.

## SECOND COUNT- BREACH OF CONTRACT

25.     Plaintiff repeats and realleges paragraphs 1-24.

26.     Defendant MAGNA CARE taking over as the new administrator for WINE advised WINE not to comply with the signed settlement agreement.

27.    As a result WINE refused to pay Plaintiff the sum of $140,000.00, but only paid $21,079.10 to Plaintiff.

28.    MAGNA CARE and WINE refused payment of $118,921.90 to Plaintiff.

WHEREFORE, Plaintiff demands judgment against MAGNA CARE and WINE in the sum of $118,921.90 along with court costs, fees and disbursements.

### THIRD COUNT- PROMISSORY ESTOPPEL

29.    Plaintiff repeats and realleges paragraphs 1-28.

30.    CIGNA as administrator of WINE and on behalf of WINE and PHX gave Plaintiff a settlement proposal.

31.    Plaintiff relied on the proposal to reduce his fee from $222,539.00 to $140,000.00, and agree not to balance bill the patient and signed the agreement.

32.    PETERSON would not have signed the agreement but for CIGNA, PHX and WINE'S representation that he would be paid $140,000.00.

33.    Defendants CIGNA, PHX and WINE did not comply with the contract by not paying Plaintiff $140,000.00.

34.    PETERSON relied on these representations to his detriment.

35.    Plaintiff has been damaged in the sum of $118,921.90.

WHEREFORE, Plaintiff demands judgment against CIGNA, PHX and WINE in

the sum of $118,920.90 along with court costs, fees and disbursements.

**FOURTH COUNT- INTERFERENCE WITH**
**CONTRACTUIAL RELATIONS**

36.    Plaintiff repeats and realleges paragraphs 1-35.

37.    Plaintiff signed a settlement agreement with CIGNA, PHX and WINE wherein it would be paid $140,000.00.

38.    MAGNA CARE, as the new administrator of WINE, advised WINE to breach the contract and not pay Plaintiff the proper amount.

39.    As a result of MAGNA CARE action, WINE refused to pay PETERSON $140,000.00 but only paid $21,079.10 refusing to pay the balance of $118,921.90.

WHEREFORE, Plaintiff demands judgment against MAGNA CARE and WINE in the sum of $118,920.90 along with court costs, fees and disbursements.

EDWARD S. ZIZMOR ESQ.
Attorney for Plaintiff

07/02/2017  10:11    2015250519                    DR PETERSON                      PAGE  02/04

PHILADELPHIA CARE CENTER
1777 SENTRY PARK WEST
DUBLIN HALL 4TH FLOOR
BLUE BELL, PA 19422
(800)768-4695



APRIL 28, 2016

THOMAS PETERSON
140 PROSPECT AVE
STE 18
HACKENSACK, NJ 07601-2260
IllualualllullluuullabldddllullludllJ

| | |
|---|---|
| Patient Name: | OLGA MENDOZA |
| Plan Enrollee: | DONALD MENDOZA |
| Enrollee's ID: | 571973975 |
| Setting: | In-patient  Acute Facility |
| Employer/Group Name: | UFCW 1D |
| Company Paying Claim: | WLDWU 1D |
| Reference Code: | 76N60811 |
| Date of Admission: | 06/01/2016 |
| Authorization Effective Date(s): | 06/01/2016 to 06/04/2016 |
| Total Approved Days: | 3 |
| Next Review Date: | 06/04/2016 |

Dear OLGA MENDOZA:

On 04/28/2016, THOMAS PETERSON asked us to determine if the inpatient service(s) at
HACKENSACK UNIV HOSP is medically necessary for you:

Approved:
Pre-Scheduled Inpatient, Acute Care

NECK SPINE FUSION 22554

ADDITIONAL SPINAL FUSION 22585

APPLY SPINE PROSTH DEVIC 22851

REMOVE VERT BODY DCMPRN  63081

REMOVE VERTEBRAL BODY AD 63082

We carefully reviewed the information your doctor sent us. We determined the service is
medically necessary.

*This letter serves as authorization of medical necessity only.* CareAllies hasn't reviewed the health plan
and cannot guarantee that these services are covered. In fact, these services could be excluded or
limited under your plan. CareAllies doesn't pay claims and this letter doesn't guarantee payment
of benefits.

We encourage you to verify your eligibility and benefit coverage by contacting your health care
claims payor.

*Please remember:* you must be enrolled in the plan and eligible for benefits on the date you receive

N3OI79KP

CareAllies is a registered service mark licensed for use by Cigna Corporation and its operating subsidiaries. All products and services are provided by or through such
operating subsidiaries, including Cigna Health Management, Inc., and not by Cigna Corporation. Cigna Health Management, Inc. is a licensed and accredited utilization
review entity.

07/02/2017   10:11      2015250519              DR PETERSON                    PAGE  03/04

2

the service.

If you need additional services, please have your health care professional call CareAllies at (800)768-4695.

While you're in the hospital, we'll work with your doctors and other health care professionals to get approvals for any medically necessary services covered by your plan. After you leave the hospital, you and your doctor are responsible for getting approvals for additional medical services.

You and your health care professional can view the CareAllies Medical Necessity Guidelines anytime on CareAllies.com.

If you have any questions, please call (800)768-4695. I'll be there between 8:30 AM and 5:00 PM.

I look forward to helping you in any way we can.

If you have a hearing or speech impairment and use Telecommunications Relay Services (TRS) or a Text Telephone (TTY), dial 711 to connect with a TRS operator.


Sincerely,



CATHERINE GOLSON
CareAllies Utilization Management



c:
WLDWU 1D
OLGA MENDOZA
HACKENSACK UNIV HOSP



**pnx**
A COST MANAGEMENT COMPANY

2 Crossroads Drive
Bedminster, NJ 07921
(888) 311-3505 Phone (ext. 373)
(855) 793-4303 Fax
Jessica.conlon@zelis.com

# *Settlement Proposal*

| To: | Kathy | From: | Jessica Conlon |
|------|-------|-------|----------------|
| Fax: | (201) 525-0519 | Pages: | 2 (Including Cover Sheet) |
| Re: | MENDOZA, OLGA | Date: | 7/11/2018 |

**REVISED**

Attached please find an agreement that needs to be authorized to expedite immediate payment.

If you have any questions or require any additional information please feel free to call me at (888)311-3505.

The document in this facsimile transmission may contain privileged and confidential health information that is privileged and legally protected from disclosure by federal law, the Health Insurance Portability and Accountability Act (HIPAA). This information is intended only for the use of the individual or entity named above. If you are not the intended recipient, you are hereby notified that reading, disseminating, disclosing, distributing, copying, acting upon or otherwise using the information contained in this facsimile is strictly prohibited. If you have received this information in error, please notify us immediately by telephone toll-free, at (888) 311-3505 and destroy this facsimile.

If you wish to discontinue receiving future faxes from this sender, send your opt-out request to us by email at provider services@pnx-online.com, by fax at (855) 260-3398, or by telephone at (888) 480-9444. Specify the telephone number(s) of the fax machine(s) covered by your request. As required by law we will comply with your request within the shortest reasonable time not to exceed 30 days.



**phx**

A COST MANAGEMENT COMPANY

Proposal Expires: 07/11/2016 3:00 PM EST

The attached proposal is being submitted to you for consideration and remittance of payment on the below detailed claim in accordance with the terms and conditions contained herein.

| Details | | | | |
|---|---|---|---|---|
| Patient ID: | 571973975 | | Contact: | Kathy |
| Patient Name: | MENDOZA, OLGA | | Phone: | 201-525-0500 |
| Date(s) of Service: | 06/01/16 - 06/01/16 | | Fax: | 201-525-0519 |
| Payor: | Cigna | | | |
| Claim ID: | 201616677216002 | | | |
| Provider: | THOMAS R PETERSON MD PC | | | |
| Total Billed Amount: | $222,539.00 | | | |
| Repriced Amount: | $140,000.00 | | | |

**Terms**    This Agreement outlines Provider's willingness to accept the following terms on the above claim:

1. The Repriced Amount will be agreed to on this claim.

2. Any late fees related to this claim will be waived by Provider and not submitted to the Payor for reimbursement.

3. In consideration, Provider will receive payment within 15-20 working days from the date this document is received in the PHX office. The EOB/EOP remark will designate that the discount is through PHX or NHBC.

4. Processing by the Payor will be subject to any benefit plan terms such as deductibles, co-insurance, co-pays, exclusions and code edit reductions per the plan guidelines. Provider agrees not to balance bill the Payor, administrator and/or patient for the difference between the Total Billed Amount and the Repriced Amount in accordance with the terms of this Agreement.

**Acceptance**    I have the authority to accept the provisions outlined in this Agreement and further provide the payor the assurance the proceeds associated with this claim have not been previously assigned to any other organization.

Please sign below and fax to (855) 783-4303 or call us at (888) 311-3505.

_Kathleen Kaye_    _7/11/16_
Signature                     Date

_KATHLEEN KAYE_
Printed Name                     E-Mail Address

If you have any questions, please contact me at (888) 311-3505 (ext. 373).

Sincerely,

_Jessica Conlon_

Jessica Conlon
Claims Associate

* PHX is not financially responsible and/or liable for any payments to the Provider. Payment of benefits, if any, is subject to the terms and conditions of the Payor's plan design and/or existing contracts. This agreement does not constitute, nor should it be construed as, a guaranty of payment by the Payor.

PHX Claim ID: 42299543

| DESCRIPTION OF SERVICES CLAIMS / DATE OF SERVICE | TOTAL CHARGES | INELIGIBLE | EOB | PER SCHEDULE | MULTIPLAN RATE | DEDUCTIBLE | TOTAL PAYABLE |
|---|---|---|---|---|---|---|---|
| 58076  (63081)06/01/16 | 59,808.00 | 8,092.96 | 59 | 8,092.96 | 8,092.96 | 0.00 | 0.00 |
| PAYMENT AS PER DETAILED EXPLANATION OF REVIEW BY NLB | | | | | | | |
| COPIES ENCLOSE. | | | | | | | |
| | | | | | | | |
| #63081 & 63082 CODES NOT APPROPIATE AS PER REVIEW | | | | | | | |
| 58076  (63082)06/01/16 | 19,936.00 | 2,697.65 | 59 | 2,697.65 | 2,697.65 | 0.00 | 0.00 |
| 58076  (22554)06/01/16 | 46,359.00 | 6,273.10 | 59 | 6,273.10 | 6,273.10 | 0.00 | 0.00 |
| NOT APPROPRIATE | | | | | | | |
| | | | | | | | |
| COPIES OF REVIEW ENC. | | | | | | | |
| 58076  (22845)06/01/16 | 26,491.00 | 0.00 | | 6,804.00 | 6,804.00 | 0.00 | 4,762.80 |
| 58076  (22851)06/01/16 | 16,557.00 | 0.00 | | 3,676.00 | 3,676.00 | 0.00 | 2,573.20 |
| 58076  (63020)06/01/16 | 53,388.00 | 0.00 | | 5,881.00 | 5,881.00 | 0.00 | 4,116.70 |
| 58076  (22551)06/01/16 | 13,752.00 | 0.00 | | 13,752.00 | 13,752.00 | 0.00 | 9,626.40 |
| STATUS | 236,291.00 | 17,063.71 | | 47,176.71 | 47,176.71 | 0.00 | 21,079.10 |

EOB (See Reverse):

DONALD MENDOZA
4603 HUDSON AVENUE
APT 4
UNION CITY, NJ 07087

Provider Name: THOMAS R PETERSON MD PC,

Received:  08/02/16

---

WINE, LIQUOR & DISTILLERY WORKERS UNION
LOCAL 1-D MAJOR MEDICAL CLAIM ACCT
8402 18TH AVE.
Brooklyn, NY 11214

SIGNATURE BANK

1-1357/280

128768

08/05/16

21,079.99 Dollars and 10 cents                                21,079.10

THOMAS R PETERSON MD PC
140 PROSPECT AVE SUITE 18
HACKENSACK, NJ 076010000

⑆ 128768 ⑆   ⑆ 10 0280 13570 ⑆   1011 0110 8801 ⑆

EXHIBIT E

**Appendix XII-B1**

<table>
<tr>
<td rowspan="3"></td>
<td rowspan="3">

## CIVIL CASE INFORMATION STATEMENT
### (CIS)
Use for initial Law Division
Civil Part pleadings (not motions) under Rule 4:5-1.
**Pleading will be rejected for filing, under Rule 1:5-6(c),
if information above the black bar is not completed
or attorney's signature is not affixed.**

</td>
<td>**FOR USE BY CLERK'S OFFICE ONLY**</td>
</tr>
<tr>
<td>PAYMENT TYPE: ☐ CK  ☐ CG  ☐ CA</td>
</tr>
<tr>
<td>CHG/CK NO.:</td>
</tr>
<tr>
<td colspan="2">AMOUNT:</td>
</tr>
<tr>
<td colspan="2">OVERPAYMENT:</td>
</tr>
<tr>
<td colspan="2">BATCH NUMBER:</td>
</tr>
</table>

| ATTORNEY/PRO SE NAME <br> Edward S. Zizmor, Esq.  ID#016631976 | TELEPHONE NO. <br> 201   342-6222 | COUNTY OF VENUE <br> **BERGEN** |
|---|---|---|
| FIRM NAME (if applicable) | | DOCKET NO. (when available) |
| OFFICE ADDRESS <br><br> **60 Court Street-STE 1A** <br> **Hackensack, New Jersey 07601** | | DOCUMENT TYPE <br> **Complaint** |
| | | JURY DEMAND ☐ YES  ☐ NO |

| NAME OF PARTY (e.g., John Doe, Plaintiff) <br><br> **Thomas R. Peterson MD PC** | CAPTION <br><br> **Thomas R. Peterson MD PC vs. Cigna Health & Life Insurance** *et al* |
|---|---|

| CASE TYPE NO. <br> (See reverse side for listing) <br><br> **599** | HURRICANE SANDY <br> RELATED? <br> ☐ YES    ☒ NO | IS THIS A PROFESSIONAL MALPRACTICE CASE?    ☐ YES    ☒ NO <br><br> IF YOU HAVE CHECKED "YES," SEE N.J.S.A. 2A:53A-27 AND APPLICABLE CASE LAW <br> REGARDING YOUR OBLIGATION TO FILE AN AFFIDAVIT OF MERIT. |
|---|---|---|
| RELATED CASES PENDING? <br> ☐ YES    ☒ NO | | IF YES, LIST DOCKET NUMBERS |
| DO YOU ANTICIPATE ADDING ANY PARTIES <br> (arising out of same transaction or occurrence)? <br> ☐ YES    ☒ NO | | NAME OF DEFENDANT'S PRIMARY INSURANCE COMPANY (if known) <br><br> ☐ NONE    ☐ UNKNOWN |

**THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE.**

CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

| DO PARTIES HAVE A CURRENT, PAST <br> OR RECURRENT RELATIONSHIP? <br><br> ☐ YES    ☒ NO | IF YES, IS THAT RELATIONSHIP <br> ☐ EMPLOYER-EMPLOYEE    ☐ FRIEND/NEIGHBOR    ☐ OTHER (explain) _____ <br> ☐ FAMILIAL    ☒ BUSINESS |
|---|---|

| DOES THE STATUTE GOVERNING THIS CASE PROVIDE FOR PAYMENT OF FEES BY THE LOSING PARTY?    ☐ YES    ☐ NO |
|---|

USE THIS SPACE TO ALERT THE COURT TO ANY SPECIAL CASE CHARACTERISTICS THAT MAY WARRANT INDIVIDUAL MANAGEMENT OR
ACCELERATED DISPOSITION:

| ♿ | DO YOU OR YOUR CLIENT NEED ANY DISABILITY ACCOMMODATIONS <br> ☐ YES    ☒ NO | IF YES, PLEASE IDENTIFY THE <br> REQUESTED ACCOMMODATION: |
|---|---|---|
| | WILL AN INTERPRETER BE NEEDED? <br> ☐ YES    ☒ NO | IF YES, FOR WHAT LANGUAGE: |

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be
redacted from all documents submitted in the future in accordance with Rule 1:38-7(b).

ATTORNEY SIGNATURE

30 - Civil Case Information Statement (CIS)
Appendix XII-B1; CN 10517
Rev. 6/17   Effective 6/5/17   P6/17

Printed by ALL-STATE LEGAL®
A Division of ALL-STATE International, Inc.
www.aslegal.com   800.222.0510       Page 1



**SIDE 2**

# CIVIL CASE INFORMATION STATEMENT
## (CIS)
Use for initial pleadings (not motions) under Rule 4:5-1

**CASE TYPES** (Choose one and enter number of case type in appropriate space on the reverse side.)

**Track I — 150 days' discovery**
| | |
|---|---|
| 151 | NAME CHANGE |
| 175 | FORFEITURE |
| 302 | TENANCY |
| 399 | REAL PROPERTY (other than Tenancy, Contract, Condemnation, Complex Commercial or Construction) |
| 502 | BOOK ACCOUNT (debt collection matters only) |
| 505 | OTHER INSURANCE CLAIM (INCLUDING DECLARATORY JUDGMENT ACTIONS) |
| 506 | PIP COVERAGE |
| 510 | UM or UIM CLAIM (coverage issues only) |
| 511 | ACTION ON NEGOTIABLE INSTRUMENT |
| 512 | LEMON LAW |
| 801 | SUMMARY ACTION |
| 802 | OPEN PUBLIC RECORDS ACT (SUMMARY ACTION) |
| 999 | OTHER (briefly describe nature of action) _____ |

**Track II — 300 days' discovery**
| | |
|---|---|
| 305 | CONSTRUCTION |
| 509 | EMPLOYMENT (other than CEPA or LAD) |
| 599 | CONTRACT/COMMERCIAL TRANSACTION |
| 603N | AUTO NEGLIGENCE - PERSONAL INJURY (non-verbal threshold) |
| 603Y | AUTO NEGLIGENCE - PERSONAL INJURY (verbal threshold) |
| 605 | PERSONAL INJURY |
| 610 | AUTO NEGLIGENCE - PROPERTY DAMAGE |
| 621 | UM or UIM Claim (includes bodily injury) |
| 699 | TORT – OTHER |

**Track III — 450 days' discovery**
| | |
|---|---|
| 005 | CIVIL RIGHTS |
| 301 | CONDEMNATION |
| 602 | ASSAULT AND BATTERY |
| 604 | MEDICAL MALPRACTICE |
| 606 | PRODUCT LIABILITY |
| 607 | PROFESSIONAL MALPRACTICE |
| 608 | TOXIC TORT |
| 609 | DEFAMATION |
| 616 | WHISTLEBLOWER/CONSCIENTIOUS EMPLOYEE PROTECTION ACT (CEPA) CASES |
| 617 | INVERSE CONDEMNATION |
| 618 | LAW AGAINST DISCRIMINATION (LAD) CASES |

**Track IV — Active Case Management by Individual Judge/450 days' discovery**
| | |
|---|---|
| 156 | ENVIRONMENTAL/ENVIRONMENTAL COVERAGE LITIGATION |
| 303 | MT. LAUREL |
| 508 | COMPLEX COMMERCIAL |
| 513 | COMPLEX CONSTRUCTION |
| 514 | INSURANCE FRAUD |
| 620 | FALSE CLAIMS ACT |
| 701 | ACTIONS IN LIEU OF PREROGATIVE WRITS |

**Multicounty Litigation (MCL) (Track IV)**
| | | | |
|---|---|---|---|
| 271 | ACCUTANE/ISOTRETINOIN | 292 | PELVIC MESH/BARD |
| 274 | RISPERDAL/SEROQUEL/ZYPREXA | 293 | DEPUY ASR HIP IMPLANT LITIGATION |
| 281 | BRISTOL-MYERS SQUIBB ENVIRONMENTAL | 295 | ALLODERM REGENERATIVE TISSUE MATRIX |
| 282 | FOSAMAX | 296 | STRYKER REJUVENATE/ABG II MODULAR Hip Stem Components |
| 285 | STRYKER TRIDENT HIP IMPLANTS | 297 | MIRENA CONTRACEPTIVE DEVICE |
| 286 | LEVAQUIN | 299 | OLMESARTAN MEDOXOMIL MEDICATIONS/BENICAR |
| 287 | YAZ/YASMIN/OCELLA | 300 | TALC-BASED BODY POWDERS |
| 289 | REGLAN | 601 | ASBESTOS |
| 290 | POMPTON LAKES ENVIRONMENTAL LITIGATION | 623 | PROPECIA |
| 291 | PELVIC MESH/GYNECARE | 624 | STRYKER LFIT CoCr V40 FEMORAL HEADS |

If you believe this case requires a track other than that provided above, please indicate the reason on Side 1,
in the space under "Case Characteristics."

Please check off each applicable category:  ☐ Putative Class Action   ☐ Title 59

30 - Civil Case Information Statement (CIS)
Appendix XII-B1; CN 10517
Rev. 6/17   Effective 6/5/17   P6/17

Printed by ALL-STATE LEGAL®
A Division of ALL-STATE International, Inc.
www.aslegal.com   800.222.0510   Page 2

# Exhibit B

Michael S. Horn (#002582005)
**ARCHER & GREINER, P.C.**
21 Main Street - Suite 353
Hackensack, New Jersey 07601-7095
(201) 342-6000
Attorneys for Defendant Zelis Claims Integrity Inc. (f/k/a Premiere Healthcare Exchange, Inc.
and formerly d/b/a PHX)

| | |
|---|---|
| THOMAS R. PETERSON, MD, P.C., <br><br> Plaintiff, <br><br> v. <br><br> CIGNA HEALTH AND LIFE INSURANCE COMPANY d/b/a CIGNA HEALTHCARE, PHX, WINE LIQUOR AND DISTILLERY WORKERS, LOCAL RD, MAJOR MEDICINE PLAN, MAGNA CARE, <br><br> Defendants. | SUPERIOR COURT OF NEW JERSEY LAW DIVISION: BERGEN COUNTY <br><br> DOCKET NO.: BER-L-518-18 <br><br> CIVIL ACTION <br><br> ORDER |

FILED

OCT 23 2018

W̶H̶I̶T̶E̶ ̶E̶ ̶P̶R̶O̶D̶, J.S.C.

**THIS MATTER** having been opened to the Court by Archer & Greiner, P.C. (Michael

S. Horn, Esq., appearing), attorneys for the Defendant, Zelis Claims Integrity Inc. (formerly

known as Premiere Healthcare Exchange Inc. and formerly dba PHX), on notice of motion to

attorneys for the Plaintiff, for an Order dismissing the complaint pursuant to Rule 4:6-2(e) or, in

the alternative, requiring Plaintiff to provide a more definitive complaint; and the Court having

considered the submission of the parties and good cause having been shown;

IT IS on this 23 nd day of October , 2018;

ORDERED that the complaint shall be and hereby is dismissed w/o prejudice as to Zelis Claims

Integrity Inc. (formerly known as Premiere Healthcare Exchange Inc. and formerly dba PHX)

pursuant to Rule 4:6-2(e); or, in the alternative,

214854055v1

**ORDERED** that the Plaintiff shall provide a more definitive complaint as to Zelis Claims

Integrity Inc. (formerly known as Premiere Healthcare Exchange Inc. and formerly dba PHX)

pursuant to Rule 4:6-4 within twenty (20) days; *assuming a good faith factual basis to do so* and

**ORDERED** that a copy of this Order shall be served upon all counsel of record within

seven (7) days of the date of receipt hereof.

_____ J.S.C.
WALTER F. SKROD, J.S.C.

[X]   Opposed

[  ]   Unopposed

*For the reasons stated on the record*

# Exhibit C

**ORANSKY, SCARAGGI & BORG, P.C.**
Andrew D. Borg, Esq. (008841974)
175 Fairfield Avenue, Suite 1A
West Caldwell, New Jersey 07007-0866
(973) 364-1200
Andrewborg@msn.com
*Attorneys for Defendant Wine, Liquor and*
  *Distillery Workers Local 1-D Major Medical Plan*

FILED

NOV 22 2019

WALTER F. SKROD, J.S.C.

## SUPERIOR COURT OF NEW JERSEY
## LAW DIVISION:  BERGEN COUNTY

| | |
|---|---|
| THOMAS R. PETERSON, MD PC, | DOCKET NO. BER-L-518-18 |
| Plaintiff, | |
| v. | (~~PROPOSED~~) ORDER PARTIALLY DISMISSING PLAINTIFF'S SECOND AMENDED COMPLAINT AGAINST DEFENDANT WINE |
| CIGNA HEALTH AND LIFE INSURANCE COMPANY d/b/a CIGNA HEALTHCARE , WINE, LIQUOR AND DISTILLERY WORKERS LOCAL 1-D MAJOR MEDICAL PLAN and MAGNA CARE, OLGA MENDOZA, NATIONAL LABOR BENEFITS | |
| Defendants. | |

**THIS MATTER,** having been opened to the Court by way of Motion filed by

Defendant Wine, Liquor and Distillery Workers Local 1-D Major Medical Plan ("Wine")

Through its attorney,, Oransky, Scaraggi & Borg, P.C., seeking an Order dismissing

Plaintiff's Second Amended Complaint pursuant to R.4:6-2; and Defendant having provided

Plaintiff and all other parties with Notice of Motion and supporting documentation; and the

Court having considered the parties' submissions, in support of and in opposition to the

Motion, as well as the arguments of counsel, if any; and good cause having been shown:

**IT IS** on this _22ND_ day of _NOV_, 2019,

**ORDERED** that Defendant, Wine's Motion to dismiss Plaintiff's Second Amended

Complaint is hereby **GRANTED** _in PART_; and

**IT IS FURTHER ORDERED** that Plaintiff's claims against Defendant Wine are _as to Counts 1, 2, 3, 4, 9, 10 AND 12._

hereby ~~dismissed in their entirety.~~

_The motion to dismiss Count 8 is DENIED._

Date: June 4, 2019

_____

Hon. Walter F. Skrod, J.S.C.

(✓) Opposed

( ) Unopposed

_For the reasons stated on the record during/after Oral Argument._

_Counts 1 + 2 are dismissed as the court has already determined that the purported settlement agreement was not a contract._

_Count 3 (promissory estoppel) does not apply + is dismissed. Surgery was performed pre billing. PLAINTIFF Billed MENDOZA. PURPORTED AGREEMENT ~~was not~~ was not a contract with Wine, nor a promise by Wine._

_Count 4, (interference with contractual relations — the settlement agreement) (ABC) [10+12] dismissed as the purported settlement agreement was not a contract + Wine did not make a promise. Wine did not interfere with its own policy terms. ~~No~~ No allegation that Wine acted ~~intentionally~~ intentionally +/or with malice._

_Count 9 (book account) is dismissed as plaintiff has ~~no~~ no contract with Wine + the amount allegedly due is not certain. Wine's motion to dismiss Count 8 is DENIED. Wine owes the plaintiff the reasonable value of the services performed by plaintiff for Mendoza, under the terms of the Wine plan at issue. NO FEDERAL PREEMPTION OVER THE AMOUNT OF REIMBURSEMENT._

**BECKER LLC**
Joseph G. Harraka, Jr., Esq. (007731990)
Joseph F. Falgiani, Esq. (027861980)
354 Eisenhower Parkway, Suite 1500
Livingston, New Jersey 07039
(973) 422-1100
jfalgiani@becker.legal
Attorneys for Defendant
MagnaCare Administrative Services, LLC

FILED

NOV 22 2019

WALTER F. SKROD, J.S.C.

| | |
|---|---|
| THOMAS R. PETERSON MD, PC, | ) SUPERIOR COURT OF NEW JERSEY |
| Plaintiff, | ) LAW DIVISION: BERGEN COUNTY |
| | ) |
| vs. | ) |
| | ) DOCKET NO. BER-L-518-18 |
| CIGNA HEALTH AND LIFE INSURANCE | ) |
| d/b/a CIGNA HEALTH CARE, WINE | ) **ORDER DISMISSING COMPLAINT** |
| LIQUOR AND DISTILLERY WORKERS | ) _AGAINST MAGNA CARE ONLY_ |
| LOCAL 1-D, MAJOR MEDICAL PLAN, | ) |
| MAGNA CARE, OLGA MENDOZA, | ) |
| NATIONAL LABOR BENEFITS, | ) |
| | ) |
| Defendants. | ) |

THIS MATTER, having been opened to the Court by Becker LLC, Joseph F. Falgiani, Esq.

appearing, counsel for defendant Magna Care Services, LLC ("MagnaCare") on motion pursuant

to R. 4:6-2 for an order dismissing the Second Amended Complaint against Magna Care, on notice

to all parties; and

The Court having considered the moving and opposition papers and the argument of

counsel, and good cause appearing,

IT IS on this _22ND_ day of ~~July~~ November, 2019

**ORDERED** that the First, Second, Third, Fourth Eighth and Ninth Counts of the Second

Amended Complaint be and hereby are **DISMISSED** in their entirety, **WITH PREJUDICE,**

3

# Exhibit D

against defendant MagnaCare.


**SO ORDERED**

_____
Walter J. Skrod, J.S.C.

(x) opposed

For the REASONS stated in the Record during/after
Oral Argument

The court has already determined that the <sub>purported</sub> settlement
proposal was not a contract (1st + 2nd counts are dismissed)
3rd count (promissory estoppel) does not apply. Surgery
was performed before the purported settlement agreement, which was
not a contract. 3rd count is dismissed. PLAINTIFF BILLED MENDOZA

4th, <sub>10th + 12th</sub> count (Interference with contractual relations) ~~and the~~ ARE
dismissed as the <sub>purported</sub> settlement agreement was not a contract.
Wine advised that NLB evaluated plaintiff's claim, not
MAGNA. No allegation that evaluation was done with malice/intention<sub>ally</sub>

5th count (Implied contract) is dismissed as Wine advised
NLB, NOT MAGNA, evaluated plaintiff's claim under Wine's
plans terms

9th Count (Book account) is dismissed as the purported
settlement agreement is not a contract.

4

# Exhibit E

Cohen, Leder, Montalbano & Connaughton, LLC
669 River Drive, Suite 125
Elmwood Park, New Jersey 07407
(908) 298-8800
*Attorneys for Defendant National Labor Benefits*

FILED

NOV 22 2019

WALTER F. SKROD, J.S.C.

|  |  |
|---|---|
| THOMAS R. PETERSON, M.D., P.C., | : SUPERIOR COURT OF NEW JERSEY |
|  | : LAW DIVISION: BERGEN COUNTY |
|  | : Docket No. BER-L-518-18 |
| Plaintiff, | : |
|  | : |
| v. | : Civil Action |
|  | : |
| CIGNA HEALTH AND LIFE INSURANCE | : *PARTIALLY* |
| d/b/a CIGNA HEALTH CARE, WINE | : [PROPOSED] ORDER DISMISSING |
| LIQUOR AND DISTILLERY WORKERS | : PLAINTIFF'S SECOND AMENDED |
| LOCAL 1-D, MAJOR MEDICAL PLAN, | : COMPLAINT *AGAINST* |
| MAGNA CARE, OLGA MENDOZA, | : *Defendant NLB* |
| NATIONAL LABOR BENEFITS, | : |
|  | : |
| Defendants. | : |

**THIS MATTER**, having been opened to the Court by way of motion filed by Defendant National

Labor Benefits ("NLB"), through its attorney, Cohen, Leder, Montalbano & Connaughton, LLC, seeking an

Order dismissing Plaintiff's Second Amended Complaint pursuant to R. 4:6-2; and Defendant having

provided Plaintiff and all other parties with notice of the motion and supporting documentation; and the

Court having considered the parties' submissions, in support of and in opposition to the motion, as well

as the arguments of counsel, if any; and good cause having been shown:

**IT IS** on this *22ND* day of *NOVEMBER*, 2019,

**ORDERED** that Defendant, NLB's Motion to Dismiss Plaintiff's Second Amended Complaint is

*PARTIALLY*

hereby **GRANTED**; and

**IT IS FURTHER ORDERED** that Plaintiff's claims against Defendant NLB are hereby dismissed in

~~their entirety.~~ *AS TO COUNTS ~~8, 9~~ 10 & 12*

*THE MOTION TO DISMISS*

*COUNT ~~11~~ IS DENIED*

_____

Hon. Walter F. Skrod, J.S.C.

(X) Opposed *(whether the 11th Count is called Implied Contract or Negligence*
() Unopposed                                                            *AS AWST NLB*

*See reasons manually listed on the 11/22/19 order granting*
*partial dismissal of plaintiff's 2nd Amended complaint AS AWST*
*Wine. NLB owed plaintiff the duty to properly advise Wine as to the correct*
*plan evaluation of plaintiff's ~~claim~~ claims (even though settlement agreement*
*was not a contract)*

# Exhibit F

Francis J. DeVito, P.A.
250 Moonachie Road
Suite 305
Moonachie, NJ 07074
(201) 487-7575
Attorney for Plaintiff
I.D.#244461968

---------------------------------------------x   SUPERIOR COURT OF NEW JERSEY
                                                  LAW DIVISION – BERGEN COUNTY
THOMAS R. PETERSON, M.D., P.C.,                   DOCKET NO.:  BER-518-18

      PLAINTIFF,

V.                                                               CIVIL ACTION

CIGNA HEALTH AND LIFE
INSURANCE d/b/a CIGNA HEALTH                      SECOND AMENDED COMPLAINT
CARE, WINE LIQUOR AND
DISTILLERY WORKERS LOCAL 1-D,
MAJOR MEDICAL PLAN, MAGNA
CARE, OLGA MENDOZA, NATIONAL
LABOR BENEFITS,

      DEFENDANTS.

-----------------------------------------------x

      Plaintiff, Thomas R. Peterson, M.D., with an office located at 140 Prospect Avenue,

Hackensack, New Jersey 07601, complaining of the Defendant says:

## THE PARTIES

1. Plaintiff Thomas R. Peterson, M.D., PC, (hereinafter called **"PETERSON"**) is a
   provider of medical services duly licensed under the laws of the State of New Jersey.

2. Defendant **CIGNA** Health and Life Insurance Company d/b/a (hereinafter called
   **"CIGNA"**) is an insurance company licensed to do business in the State of New Jersey.

3. Defendant PHX is a cost management company licensed to do business in the State of
   Jersey and located at 2 Crossroads Drive, Bedminster, NJ 07921.

4. Defendant **WINE**, Liquor and Distillery Workers Union, Local 1-D, Major Medical
   Plan., (hereinafter called **"WINE"**) is a union with an insurance plan for its members it is
   located in Brooklyn, NY.

5.     Defendant **MAGNA CARE** is an insurance company licensed to do business in the State of New Jersey.

6.     Defendant **OLGA MENDOZA** is an individual who was a patient of the Plaintiff and upon whom Plaintiff did surgery.

7.     Defendant **National Labor Benefits (NLB)** is an entity upon information and belief in the business of reviewing medical claims.

### THE FACTS

7.     Plaintiff Peterson is an out of network Physician at all times set forth in this action.

8.     **OLGA MENDOZA** at all times had medical coverage through Defendant **WINE**.

9.     The insurance plan of WINE which covered **OLGA MENDOZA** was administrated initially by **CIGNA**.

10.     On April 28, 2016, Care Allies, acting upon approval of **CIGNA** and **WINE**, authorized Plaintiff Peterson to perform surgery on **OLGA MENDOZA.**

11.     On June 2, 2016, Plaintiff Peterson performed surgery on **OLGA MENDOZA.**

12.     Plaintiff then submitted his bill of $222,539.00 to **CIGNA**, as Administrator of **OLGA MENDOZA**'s insurance plan with **WINE.**

13.     Defendant **CIGNA** then engaged Defendant PHX to submit a payment settlement proposal to Plaintiff Peterson.

14.     The settlement proposal set forth that in consideration of Plaintiff Peterson lowering his fee from $222,539.00, and agreeing not to balance bill the patient, **CIGNA** would have a payment of $140,000.00 paid to Peterson.

15.     This settlement proposal was made with the approval of **CIGNA**, on behalf of Defendant WINE, which would pay the $140,000.00.

16.     Plaintiff Peterson relied on this representation and had its office manager sign the Agreement on July 11, 2016, which was then faxed back to PHX.

17.     Plaintiff Peterson would not have signed this Agreement, but for the representation that $140,000.00 would be paid.

18.     Defendant **WINE**, thereafter, fired Defendant **CIGNA**, as Administrator and hired Defendant **MAGNA CARE**, as Administrator of **WINE's** Medical Plan.

19.    Defendant **MAGNA CARE** then attempted to revoke the settlement Agreement, by advising WINE not to comply with its terms.

20. Defendant **NLB** is in the business of reviewing for insurers medical claims such as the medical claim submitted by Plaintiff and, upon information and belief reviewed the claim submitted by Plaintiff.

21.    **WINE** then, based on **MAGNA CARE's** advice, paid Plaintiff $21,079.10 but failed and refused to pay the balance of $118,921.90.

## FIRST COUNT
### BREACH OF CONTRACT (SETTLEMENT AGREEMENT)

22.    Plaintiff repeats and realleges paragraphs 1-19.

23.    Defendant **CIGNA** as Administrator of **WINE**, authorized **PHX** to enter into a written Agreement with Peterson, wherein Peterson reduced his fee for medical services, on behalf of **WINE's** insured **OLGA MENDOZA** from $222,539.00 to $140,000.00 and agree not to balance bill.

24.    **CIGNA** and **WINE** failed to comply with contract and only paid Plaintiff $21,079.10.

25.    **CIGNA** and **WINE** refused to pay Plaintiff the balance of the settlement amount of $118,921.90.

**WHEREFORE**, Plaintiff demands judgment against **MENDOZA, WINE, MAGNA CARE AND CIGNA**

A.  in the sum of $118,921.90 along with court costs and fees and disbursements.

B.  Post-judgement interest

C.  Reasonable attorneys' fees and costs and expenses of litigation; and

D.  Such other and further relief as the Court shall deem just and equitable

## SECOND COUNT
## BREACH OF CONTRACT (SETTLEMENT AGREEMENT)

26.  Plaintiff repeats and realleges paragraphs 1-24.

27.  Defendant **MAGNA CARE**, taking over as the new administrator for **WINE**, upon information and belief, advised **WINE** not to comply with the signed Settlement Agreement.

28.  As a result, **WINE** refused to pay Plaintiff the sum of $140,000.00, but only paid $21,079.10 to Plaintiff.

29.  **MAGNA CARE** and **WINE** refused payment of the balance of the settled amount of $118,921.90 to Plaintiff.

**WHEREFORE,** Plaintiff demands judgment against **MENDOZA, WINE, MAGNA CARE AND CIGNA**

A.  Compensatory damages in the sum of $118,921.90 along with court costs, fees and disbursements.

B.  Post-judgement interest

C.  Reasonable attorneys' fees and costs and expenses of litigation; and

D.  Such other and further relief as the Court shall deem just and equitable

## THIRD COUNT
## PROMISSORY ESTOPPEL(SETTLEMENT AGREEMENT)

30.  Plaintiff repeats and realleges paragraphs 1-28.

31.  **CIGNA**, as administer of **WINE**, and on behalf of **WINE** and **PHX** gave Plaintiff a settlement proposal.

32.  Plaintiff relied on the proposal to reduce his fee from $222,539.00 to $140,000.00 and agree not to balance bill the patient and signed the Agreement.

33.  Peterson would not have signed the Agreement but for **CIGNA** and **WINE's** representation that he would be paid $140,000.00.

34.    Defendant **CIGNA** and **WINE** did not comply with the contract by not paying Plaintiff $140,000.00.

35.    Peterson relied on these representations to his detriment.

36.    Plaintiff has been damaged in the sum of $118,921.90.

**WHEREFORE**, Plaintiff demands judgment against **MENDOZA, WINE, MAGNA CARE AND CIGNA** for

    A.  Compensatory damages in the sum of $118,921.90 along with court costs, fees and disbursements.

    B.  Post-judgement interest

    C.  Reasonable attorneys' fees and costs and expenses of litigation; and

    D.  Such other and further relief as the Court shall deem just and equitable

## FOURTH COUNT

## INTERFERENCE WITH CONTRACTUAL RELATIONS (SETTLEMENT AGREEMENT)

37.    Plaintiff repeats and realleges paragraphs 1-35.

38.    Plaintiff signed a Settlement Agreement with **CIGNA, PHX** and **WINE** wherein it would be paid $140,000.00.

39.    **MAGNA CARE**, as the new administrator of **WINE**, advised **WINE** to breach the Contract and not pay Plaintiff the proper amount.

40.    As a result of **MAGNA CARE** action, **WINE** refused to pay Peterson $140,000.00 but only paid $21,079.10, refusing to pay the balance of $118,921.90.

**WHEREFORE**, the Plaintiff demands judgement against Defendant **MENDOZA, WINE, MAGNA CARE AND CIGNA** as follows;

    A.  Compensatory damages in the amount of $118,921.90.

    B.  Post-judgement interest

    C.  Reasonable attorneys' fees and costs and expenses of litigation; and

    D.  Such other and further relief as the Court shall deem just and equitable

## FIFTH COUNT

## (BREACH OF WRITTEN CONTRACT AGAINST MENDOZA)

41.     Peterson incorporates paragraphs 1 through 39 above, as if fully set forth herein.

42.     Defendants jointly, severally or in the alternative entered into a written agreement whereby the parties agreed that Peterson would be compensated for providing medical services to the Defendant **OLGA MENDOZA**.  The Agreement is a binding contract between Peterson and **MENDOZA**.

43.     Under the Agreement, Peterson's rendered the medical services to Defendant **MENDOZA**.  Peterson's has performed all of his obligations under the Agreement.  All conditions precedent to this claim have been fulfilled.

44.     Defendant has failed to compensate Peterson for the services rendered.

45.     Peterson's has been damaged by Defendant **MENDOZA's** failure to pay the invoices in an amount to be determined at trial.

**WHEREFORE**, the Plaintiff demands judgement against Defendant **MENDOZA** as follows;

    A.  Compensatory damages in the amount of $222,539.00

    B.  Post-judgement interest

    C.  Reasonable attorneys' fees and costs and expenses of litigation; and

    D.  Such other and further relief as the Court shall deem just and equitable

## SIXTH COUNT

## (BREACH OF ORAL CONTRACT AGAINST MENDOZA)

46.     Peterson's incorporates paragraphs 1 through 44 above, as if fully set forth herein.

47.     Defendants jointly, severally or in the alternative entered into an oral agreement whereby the Defendant **MENDOZA** agreed that Peterson's would be compensated for providing medical services (the "Agreement"). The Agreement is a binding contract between Peterson and Defendant **MENDOZA**,

48.     Under the Agreement, Peterson rendered medical services to Defendant **MENDOZA**. Peterson has performed all of his obligations under the Agreement. All conditions precedent to this claim have been fulfilled.

49.     Defendants **MENDOZA** has breached the Agreement because she has failed to compensate Peterson for the services rendered.

50.  Peterson has been damaged by Defendant **MENDOZA** failure to pay the invoices in an amount to be determined at trial.

**WHEREFORE**, the Plaintiff demands judgement against Defendant **MENDOZA** as follows;

> E.  Compensatory damages in the amount of $222,539.00
> F.  Post-judgement interest
> G.  Reasonable attorneys' fees and costs and expenses of litigation; and
> H.  Such other and further relief as the Court shall deem just and equitable

## SEVENTH COUNT
## (UNJUST ENRICHMENT AGAINST DEFENDANT MENDOZA)

51.     Peterson incorporates paragraphs 1 through 49 above, as if fully set forth herein.

52.     Peterson conferred a benefit upon Defendant **MENDOZA**, by providing medical services.

53.     Defendant **MENDOZA** accepted and retained the benefit conferred upon it by Peterson under circumstances that would make it inequitable and unjust for Defendant, **MENDOZA** to retain the benefit without compensating Peterson for the full value thereof.

54.     As such, Defendant, **MENDOZA**, owes Peterson the value of the medical services in the amount of $222,539

**WHEREFORE**, the Plaintiff demands judgement against Defendant **MENDOZA** as follows;

    A.  Compensatory damages in the amount of $222,539.00

    B.  Post-judgement interest

    C.  Reasonable attorneys' fees and costs and expenses of litigation; and

    D.  Such other and further relief as the Court shall deem just and equitable

## EIGHTH COUNT
## (BREACH OF IMPLIED CONTRACT AGAINST ALL DEFENDANTS)

55.     Peterson's incorporates paragraphs 1 through 53 above, as if fully set forth herein.

56.     Peterson rendered medical services to Defendant **MENDOZA** with the reasonable expectation that he would be paid the reasonable value of the services by all of the Defendants.

57.     Defendants jointly, severally or in the alternative accepted the services expecting to pay for them or under such circumstances that they knew, or reasonably should have known, that Peterson expected to be paid.

58.     Defendants jointly, severally or in the alterative owe Peterson the value of the medical services in the amount of $222,539.00

**WHEREFORE**, the Plaintiff demands judgement against Defendants **MENDOZA, WINE, MAGNA CARE AND CIGNA** as follows;

    A.  Compensatory damages in the amount of $222,539.00

    B.  Post-judgement interest

    C.  Reasonable attorneys' fees and costs and expenses of litigation; and

    D.  Such other and further relief as the Court shall deem just and equitable.

## NINTH COUNT
## (BOOK ACCOUNT)

59.     Peterson's incorporates paragraphs 1 through 57 above as if fully set forth herein.

60.     Defendants jointly, severally or in the alternative established a book account with Peterson for medical services rendered to Defendant **MENDOZA**.

61.     Defendants jointly, severally or in the alternative failed to pay and have refused to pay the full amount submitted by Peterson.

62.     There is due and owing the sum of $ $222,539 on a book account.

**WHEREFORE**, the Plaintiff demands judgement against Defendants **MENDOZA, WINE, MAGNA CARE AND CIGNA** as follows;

    A.  Compensatory damages in the amount of $222,539.00
    B.  Post-judgement interest
    C.  Reasonable attorneys' fees and costs and expenses of litigation; and
    D.  Such other and further relief as the Court shall deem just and equitable.

## TENTH COUNT
## INTERFERENCE WITH CONTRACTUAL RELATIONS (SETTLEMENT AGREEMENT) BY NLB

63.     Plaintiff repeats and realleges paragraphs 1-62.

64. **NLB**, upon information and belief, repriced the medical claim submitted by Plaintiff.

65. The repricing function performed by **NLB** was negligent and inappropriate and as such, interfered with the contractual relations (settlement agreement) Plaintiff had with **Wine** and representatives of **Wine**.

**WHEREFORE**, the Plaintiff demands judgement against Defendant **MENDOZA, WINE, MAGNA CARE AND CIGNA** as follows;

A.  Compensatory damages in the amount of $118,921.90.

B.  Post-judgement interest

C.  Reasonable attorneys' fees and costs and expenses of litigation; and

D.  Such other and further relief as the Court shall deem just and equitable.

**ELEVENTH COUNT**

**BREACH OF CONTRACT (SETTLEMENT AGREEMENT)**

66.      Plaintiff repeats and realleges paragraphs 1-65.

67.      Defendant **NLB** was retained to review the medical claim submitted by Plaintiff on behalf of **WINE** and, upon information and belief, advised **WINE** not to comply with the signed Settlement Agreement and to only pay an amount far less that was appropriate under the circumstances.

68.      As a result, **WINE** refused to pay Plaintiff the sum of $140,000.00, but only paid $21,079.10 to Plaintiff.

**WHEREFORE,** Plaintiff demands judgment against **NLB** for

A.  Compensatory damages in the sum of $118,921.90 along with court costs, fees and disbursements.

B.  Post-judgement interest

C.  Reasonable attorneys' fees and costs and expenses of litigation; and

D.  Such other and further relief as the Court shall deem just and equitable

**TWELFTH COUNT**

**INTERFERENCE WITH CONTRACTUAL RELATIONS BY NLB**

63.      Plaintiff repeats and realleges paragraphs 1-68.

64.      **NLB**, upon information and belief, repriced the medical claim submitted by Plaintiff.

65.    The repricing function performed by **NLB** was negligent and inappropriate and as such, interfered with the contractual relations Plaintiff had with **Wine.**

**WHEREFORE**, the Plaintiff demands judgement against Defendant **MENDOZA, WINE, MAGNA CARE AND CIGNA** as follows;

A.  Compensatory damages in the amount of $222,539.00.

B.  Post-judgement interest

C.  Reasonable attorneys' fees and costs and expenses of litigation; and

D.  Such other and further relief as the Court shall deem just and equitable.

Respectfully submitted,

By: _____
    Francis J. DeVito, Esq.
    Attorney for Plaintiff

**DESCIGNATION OF TRIAL COUNSEL**

Pursuant to R.4: 25-4, Francis J. DeVito, Esq. is hereby designated as trial counsel.

Francis J. DeVito P.A.
Attorneys for Plaintiff

By: _____
    Francis J. DeVito

## CERTIFICATION

I hereby certify that the within Amended Complaint has been filed in accordance with the Rules of Court and I further certify that the matter in controversy is not the subject of other court or arbitration proceeding as articulated in the Amended Complaint filed by the Plaintiff. Upon information and belief, all other parties have been joined in this proceeding.

Francis J. DeVito P.A.
Attorneys for Plaintiff

By: _____
          Francis J. DeVito

Dated: March 11, 2019

## PROOF OF SERVICE

I hereby certify that the original and one copy of the within answering pleading has been filed with the Clerk of the Superior Court via Ecourts and that copies of each are being served on Defendant's attorney.

Francis J. DeVito P.A.
Attorney for Plaintiff

By: _____
          Francis J. DeVito

# Exhibit G

Michael S. Horn (#002582005)
**ARCHER & GREINER, P.C.**
21 Main Street - Suite 353
Hackensack, New Jersey 07601-7095
(201) 342-6000
Attorneys for PHX Zelis Claims Integrity Inc. (f/k/a Premiere Healthcare Exchange, Inc. and formerly d/b/a PHX)

| | |
|---|---|
| THOMAS R. PETERSON, MD, P.C., | SUPERIOR COURT OF NEW JERSEY |
| | LAW DIVISION: BERGEN COUNTY |
| Plaintiff, | |
| | DOCKET NO.: BER-L-518-18 |
| v. | |
| | CIVIL ACTION |
| CIGNA HEALTH AND LIFE INSURANCE COMPANY d/b/a CIGNA HEALTHCARE, PHX, WINE LIQUOR AND DISTILLERY WORKERS LOCAL 1-D, MAJOR MEDICINE PLAN, MAGNA CARE, OLGA MENDOZA, NATIONAL LABOR BENEFITS, | **RESPONSE TO SUBPOENA** |
| PHXs. | |

TO:   Francis J. DeVito, P.A.
      250 Moonachie Road, Suite 305
      Moonachie, New Jersey 07074

   **PLEASE TAKE NOTICE** that Non-Party Zelis Claims Integrity Inc. (f/k/a Premiere Healthcare Exchange, Inc. and formerly d/b/a PHX) (hereinafter referred to as "PHX") hereby responds to the Subpoena Duces Tecum and Ad Testificandum of Jessica Colan.

                           ARCHER & GREINER, P.C.
                           Attorneys for Non-Party Zelis Claims Integrity
                           Inc. (f/k/a Premiere Healthcare Exchange, Inc.
                           and formerly d/b/a PHX)



                           By:_____
                                Michael S. Horn, Esquire

Dated:  February 13, 2020

## GENERAL OBJECTIONS

PHX incorporates the following General Objections by reference into each specific response below as if set forth in full in the specific response.  These limitations and objections form a part of each response and are set forth herein to avoid the duplication and repetition of restating them for each response.  These General Objections may be specifically referred to in a response to a certain request to produce for the purpose of clarity.  However, the failure to specifically incorporate a General Objection should not be construed as a waiver of any General objection.

1.     PHX objects to each Request to the extent it seeks to discover information or documents that is Privileged or Work Product.  Privileged and Work Product information will not be provided.  To the extent that any information or document that is properly the subject of any such Privilege or Work Product protection is inadvertently produced in response to this Notice to Produce, such production is not intended as a waiver of any such Privilege or Work Product protection.

2.     PHX objects to each Request to the extent it seeks information or documents that constitute Confidential Information documents.

3.     PHX objects to each Request to the extent it seeks information that is Irrelevant.  To the extent that PHX'S responds to these Requests, it does not concede that any information requested is relevant to this action.

4.     PHX objects to each and every Request as Improper to the extent it seeks information protected by the New Jersey Rules of Evidence.

5.     PHX objects to each and every Request as Improper to the extent it seeks to impose burdens and obligations exceeding those imposed by the New Jersey Court Rules and any controlling discovery and/or case management orders.  PHX will respond to these requests in accordance with the requirements of the New Jersey Court Rules and any controlling discovery and/or case management orders.

6.      PHX objects to each Request to the extent it is Vague and Ambiguous, Overly Broad, Unduly Burdensome, Oppressive, Not Reasonably Designated or Premature and thus is not susceptible to response at this time.

7.      PHX'S responses are based upon information and belief after a reasonable and diligent search of records likely to contain information responsive to these requests.  To the extent Plaintiff's Requests require PHX to conduct more than a reasonable and diligent search, PHX objects that such requests are Overly Broad, Unduly Burdensome and Oppressive, and seek irrelevant information or documents.

8.      PHX objects to each and every Request as Overly Broad, Unduly Burdensome, and Oppressive and as seeking Private and Proprietary information to the extent it purports to cover persons or entities that are not parties to this action.

9.      PHX objects to each and every Request as Overly Broad, Unduly Burdensome, and Oppressive to the extent it seeks information or documents that are not reasonably available to PHX or within its possession, custody, or control.

10.     PHX objects to the Requests to the extent they seek information in Plaintiff's Possession.

11.     PHX objects to each and every Request to the extent it requests information or documents that would violate any constitutional, statutory, or common law privacy interest of PHX.

12.     PHX objects to the Requests to the extent that they call for Legal Conclusions.

13.     PHX objects to each and every Request to the extent that it is over-extensive.

14.     PHX objects to each and every Request to the extent that it seeks information that is protected from disclosure by a protective order or confidentiality order or agreement.

15.     PHX objects to the Requests to the extent that they seek information or documents that are not within the knowledge of PHX, they call for speculation on the part of PHX, or they seek discovery that is unreasonably cumulative or duplicative.

16.     PHX objects to these Requests to the extent they seek reserve information or documents as such information is Confidential, Proprietary, Private, Irrelevant, and Privileged.   Furthermore, the production of such information is contrary to public policy.

17.     PHX objects to each and every Request that seeks  "all documents..." or "each and every document..." or "any document. . ." or any other all-encompassing language to the extent that it seeks the production of documents that are Privileged.   Such verbiage also renders the subject Requests Not Reasonably Designated, Improper, Unduly Burdensome, Overly Broad and Oppressive.

18.     PHX objects to any Request that would require the provision of any information that is protected by protective orders or similar orders, confidentiality agreements, or nondisclosure agreements by which PHX must abide.

**RESERVATION OF RIGHTS**

PHX's objections and responses are based on information now known to PHX.  PHX reserves the right to amend, modify or supplement its objections and responses if it learns of new information.  The fact that, in response to some of the Requests, PHX states that it will produce documents does not mean that PHX has determined that such documents exist.  The fact that PHX may produce a document is not a concession that the document or its contents are true, accurate, or authentic or that the document is relevant or admissible in this case.

PHX reserves its rights to introduce at trial documents, information, or other evidence that may be responsive to these Requests, though not provided in response to these Requests, based upon further review of the information generated in the course of this litigation.  No incidental or implied omissions are intended by the responses herein.  The fact that PHX has objected to or otherwise responded to any Request is not intended as an admission that PHX accepts or admits the existence of any facts set forth or assumed by such Request, that the information being sought by such Request is relevant or material, or that such objection or response constitutes admissible evidence.

<u>SCHEDULE A</u>

1.      Any and all communications, including emails, correspondence, text messages that in any way relate to the subject of the complaint.

> **Objection. This request is vague and ambiguous and unlimited in scope. The request is also overly burdensome. The request also seeks the production of documents which are protected by agreements with other parties and/or which are protected by the Attorney Client Privilege and Work Product Doctrine. The request also seeks information which is private and/or proprietary. Notwithstanding, certain discoverable communications are being provided.**

2.  Any and all communications between PHX and any party to the litigation, including but not limited to PHX, Wine Liquor and Distillery Workers Local, Cigna Health and Life Insurance, MagnaCare and National Labor Benefits, including emails, correspondence, text messages that in any way relate to the subject of the complaint.

> **Objection. This request is vague and ambiguous and unlimited in scope. The request is also overly burdensome. The request also seeks the production of documents which are protected by agreements with other parties. The request also seeks information which is private and/or proprietary. Notwithstanding, the only email in PHX's possession occurred after the alleged occurrence and therefore the email is not discoverable. In addition, the documents being requested cannot produce because they are subject to confidentiality restrictions.**

3.  Any pricing or repricing reports performed by PHX and/or Cigna regarding Olga Mendoza.

**Objection. This request is vague and ambiguous and unlimited in scope. The request is also overly burdensome and seeks information which is not reasonably calculated to lead to the discovery of admissible evidence. The request also seeks the production of documents which are protected by agreements with other parties. The request also seeks information which is private and/or proprietary and/or trade secrets.**

4.  A copy of any Contract between PHX, Cigna and Wine.

**Objection. This request is vague and ambiguous and unlimited in scope. The request is also overly burdensome and seeks information which is not reasonably calculated to lead to the discovery of admissible evidence. The request also seeks the production of documents which are protected by agreements with other parties. The request also seeks information which is private and/or proprietary and/or trade secrets.**

5.  Any writings or reports, either electronic or manual that references any facet of the surgery or payment.

> **Objection. This request is vague and ambiguous and unlimited in scope. The request is also overly burdensome and seeks information which is not reasonably calculated**

to lead to the discovery of admissible evidence. The request also seeks the production of documents which are protected by agreements with other parties. The request also seeks information which is private and/or proprietary and/or trade secrets. Notwithstanding, PHX does not have writings and/or reports on the payment. There are certain electronic notes regarding negotiations.

6.  A copy of the manual and/or standard used to re-price the surgery payment.

    **Objection. This request is vague and ambiguous and unlimited in scope. The request is also overly burdensome and seeks information which is not reasonably calculated to lead to the discovery of admissible evidence. The request also seeks the production of documents which are protected by agreements with other parties. The request also seeks information which is private and/or proprietary and/or trade secrets. Notwithstanding there is no manual or written standard and therefore no responsive document.**

7.  Any and all communications, including emails, correspondence, text messages that in any way relate to the subject of the complaint between PHX, Cigna, Wine and MagnaCare.

**Objection. This request is vague and ambiguous and unlimited in scope. The request is also overly burdensome and seeks information which is not reasonably calculated to lead to the discovery of admissible evidence. The request also seeks the production of documents which are protected by agreements with other parties. The request also seeks information which is private and/or proprietary and/or trade secrets. Notwithstanding, documents responsive to this request are being provided. As indicated above, the documents being requested cannot produce because they are subject to confidentiality restrictions..**

217949036v1

# Exhibit H

**Pearl, Amy**

| | |
|---|---|
| **From:** | Horn, Michael S. <mhorn@archerlaw.com> |
| **Sent:** | Thursday, March 19, 2020 11:59 AM |
| **To:** | Francis DeVito; Rosanna DiCarlo; ocmlawyers@aol.com; chapmanj@litchfieldcavo.com; AndrewBorg@msn.com |
| **Cc:** | gorlando@ufcw.org; donald@ufcwlocal1d.org |
| **Subject:** | RE: Peterson v. Cigna, et als |

I have not heard from you regarding any plans to proceed with a virtual depositions.   Therefore we will need to adjourn Monday's deposition and schedule the deposition when we can properly plan for a virtual deposition or until the social distancing directive has been lifted.

Thank you.

**Michael S. Horn, Esq.**

Archer & Greiner P.C
Court Plaza South, West Wing
21 Main Street, Suite 353
Hackensack, NJ 07601
201-498-8529

630 Third Avenue, 7th Floor
New York, NY 10017
212-682-4940
mhorn@archerlaw.com
www.archerlaw.com



**From:** Francis DeVito <fdevito@FDEVITOLAW.COM>
**Sent:** Monday, March 16, 2020 1:59 PM
**To:** Horn, Michael S. <mhorn@archerlaw.com>; Rosanna DiCarlo <rdicarlo@FDEVITOLAW.COM>; ocmlawyers@aol.com; chapmanj@litchfieldcavo.com; AndrewBorg@msn.com
**Cc:** gorlando@ufcw.org; donald@ufcwlocal1d.org; Francis DeVito <fdevito@FDEVITOLAW.COM>
**Subject:** [EXT MAIL] RE: Peterson v. Cigna, et als

Thank you for your email.  My office is investigating various methods of conducting depositions under these circumstances and will get  back to you shortly.

Regards and thank you.

Francis J. DeVito, PA
Attorneys at Law of N.J. and N.Y.
250 Moonachie Rd
Suite 305
Moonachie N.J. 07074
Tel 201 487 7575
Fax 201 487 1646

1

This e-mail may be privileged and confidential attorney-client communication and is intended only for the use of the addressee(s) named above. If you are not the intended recipient, or the employee or agent responsible for delivering this e-mail to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this e-mail message in error, please delete it from your system without copying it, and immediately notify the sender by replying to this message or by telephone.

This email is not intended, nor shall it be deemed, unless otherwise expressly provided in writing, to (1) constitute or provide legal advice or counsel or create an attorney-client relationship with the firm or me, unless the recipient already has an attorney-client relationship with the firm or me; or (2) contain my electronic signature (the typewritten signature included in this e-mail is not an "electronic signature" within the meaning of Electronic Signatures in Global and National Commerce Act or any other law of similar import, including and without limitation, the Uniform Electronic Transactions Act, as the same may be enacted in any state). Statements made in this e-mail are not binding unless and until mutually satisfactory agreements memorializing the subject matter of the transmission are executed by hand and are exchanged between the parties to the agreement.

**From:** Horn, Michael S. <mhorn@archerlaw.com>
**Sent:** Monday, March 16, 2020 1:49 PM
**To:** Rosanna DiCarlo <rdicarlo@FDEVITOLAW.COM>; ocmlawyers@aol.com; chapmanj@litchfieldcavo.com; AndrewBorg@msn.com
**Cc:** Francis DeVito <fdevito@FDEVITOLAW.COM>; gorlando@ufcw.org; donald@ufcwlocal1d.org
**Subject:** RE: Peterson v. Cigna, et als

Hello

In light of the current situation with the corona virus, we can either try to have the upcoming deposition via skype or adjourn the deposition to a future date.

Please let me know how you want to proceed.


**Michael S. Horn, Esq.**

Archer & Greiner P.C
Court Plaza South, West Wing
21 Main Street, Suite 353
Hackensack, NJ 07601
201-498-8529

630 Third Avenue, 7th Floor
New York, NY 10017
212-682-4940
mhorn@archerlaw.com
www.archerlaw.com

**From:** Rosanna DiCarlo <rdicarlo@FDEVITOLAW.COM>
**Sent:** Friday, February 28, 2020 2:44 PM
**To:** Horn, Michael S. <mhorn@archerlaw.com>; ocmlawyers@aol.com; chapmanj@litchfieldcavo.com; AndrewBorg@msn.com
**Cc:** Francis DeVito <fdevito@FDEVITOLAW.COM>; gorlando@ufcw.org; donald@ufcwlocal1d.org
**Subject:** [EXT MAIL] RE: Peterson v. Cigna, et als

Ok, confirmed for the 23rd for Zelis.

2

Thank you.


**From:** Horn, Michael S. <mhorn@archerlaw.com>
**Sent:** Friday, February 28, 2020 1:19 PM
**To:** Rosanna DiCarlo <rdicarlo@FDEVITOLAW.COM>; ocmlawyers@aol.com; chapmanj@litchfieldcavo.com; AndrewBorg@msn.com
**Cc:** Francis DeVito <fdevito@FDEVITOLAW.COM>; gorlando@ufcw.org; donald@ufcwlocal1d.org
**Subject:** RE: Peterson v. Cigna, et als

We can lock in March 23 at 10 am at our Hackensack office for the deposition of Zelis (formerly PHX)'s witness

Thank you.


**Michael S. Horn, Esq.**

Archer & Greiner P.C
Court Plaza South, West Wing
21 Main Street, Suite 353
Hackensack, NJ 07601
201-498-8529

630 Third Avenue, 7th Floor
New York, NY 10017
212-682-4940
mhorn@archerlaw.com
www.archerlaw.com

**From:** Rosanna DiCarlo <rdicarlo@FDEVITOLAW.COM>
**Sent:** Friday, February 28, 2020 12:49 PM
**To:** ocmlawyers@aol.com; chapmanj@litchfieldcavo.com; AndrewBorg@msn.com; Horn, Michael S. <mhorn@archerlaw.com>
**Cc:** Francis DeVito <fdevito@FDEVITOLAW.COM>; gorlando@ufcw.org; donald@ufcwlocal1d.org
**Subject:** [EXT MAIL] RE: Peterson v. Cigna, et als

I have supplied everyone with several dates, please confirm the date and time you have chosen for Dr. Peterson's deposition.

Thank you,

Rosanna

**From:** ocmlawyers@aol.com <ocmlawyers@aol.com>
**Sent:** Friday, February 28, 2020 12:27 PM
**To:** chapmanj@litchfieldcavo.com; Rosanna DiCarlo <rdicarlo@FDEVITOLAW.COM>; AndrewBorg@msn.com; mhorn@archerlaw.com
**Cc:** Francis DeVito <fdevito@FDEVITOLAW.COM>; gorlando@ufcw.org; donald@ufcwlocal1d.org
**Subject:** Re: Peterson v. Cigna, et als

Rosanna:

3

Please let us know the date as soon as possible.
Warren

-----Original Message-----
From: Chapman, T. Justin <chapmanj@litchfieldcavo.com>
To: ocmlawyers@aol.com <ocmlawyers@aol.com>; rdicarlo@FDEVITOLAW.COM <rdicarlo@FDEVITOLAW.COM>;
AndrewBorg@msn.com <AndrewBorg@msn.com>; mhorn@archerlaw.com <mhorn@archerlaw.com>
CC: fdevito@FDEVITOLAW.COM <fdevito@FDEVITOLAW.COM>; gorlando@ufcw.org <gorlando@ufcw.org>;
donald@ufcwlocal1d.org <donald@ufcwlocal1d.org>
Sent: Fri, 28 Feb 2020 9:42
Subject: RE: Peterson v. Cigna, et als

Those 3 dates work for me too.

Thanks,
Justin


**T. Justin Chapman**
Partner
Licensed in Pennsylvania & New Jersey
D 215.999.5784 | F 215.557.3771| C 215.485.8914
ChapmanJ@LitchfieldCavo.com

LITCHFIELD
CAVO LLP
ATTORNEYS AT LAW

1515 Market Street| Suite 1220 | Philadelphia, PA 19102
**www.LitchfieldCavo.com**

Atlanta | Boston area | Chicago | Dallas-Fort Worth | Fort Lauderdale | Hartford area | Houston | Indiana
Las Vegas | Los Angeles area | Louisiana | Milwaukee | New Jersey | New York | Philadelphia | Phoenix
Pittsburgh | Providence | Salt Lake City | St. Louis | Tampa | West Virginia

PRIVILEGE AND CONFIDENTIALITY NOTICE: The information contained in this e-mail and any attachments may be legally privileged and confidential.
If you are not an intended recipient, you are hereby notified that any dissemination, distribution or copying of this e-mail is strictly prohibited. If you have
received this e-mail in error, please notify the sender and permanently delete the e-mail and any attachments immediately. You should not retain, copy
or use this e-mail or any attachment for any purpose, nor disclose all or any part of the contents to any other person.


**From:** ocmlawyers@aol.com <ocmlawyers@aol.com>
**Sent:** Thursday, February 27, 2020 1:18 PM
**To:** rdicarlo@FDEVITOLAW.COM; Chapman, T. Justin <chapmanj@litchfieldcavo.com>;
AndrewBorg@msn.com; mhorn@archerlaw.com
**Cc:** fdevito@FDEVITOLAW.COM; gorlando@ufcw.org; donald@ufcwlocal1d.org
**Subject:** Re: Peterson v. Cigna, et als

Folks:
    Within that availability, the 24th, 25th and 31st work for me.
Warren Mangan


-----Original Message-----
From: Rosanna DiCarlo <rdicarlo@FDEVITOLAW.COM>
To: ocmlawyers@aol.com <ocmlawyers@aol.com>; chapmanj@litchfieldcavo.com <chapmanj@litchfieldcavo.com>;
AndrewBorg@msn.com <AndrewBorg@msn.com>; mhorn@archerlaw.com <mhorn@archerlaw.com>
Cc: Francis DeVito <fdevito@FDEVITOLAW.COM>; gorlando@ufcw.org <gorlando@ufcw.org>; donald@ufcwlocal1d.org
<donald@ufcwlocal1d.org>
Sent: Thu, Feb 27, 2020 12:32 pm
Subject: RE: Peterson v. Cigna, et als

My client is available from March 24-31.

**From:** ocmlawyers@aol.com <ocmlawyers@aol.com>
**Sent:** Thursday, February 27, 2020 12:19 PM
**To:** Rosanna DiCarlo <rdicarlo@FDEVITOLAW.COM>; chapmanj@litchfieldcavo.com; AndrewBorg@msn.com; mhorn@archerlaw.com
**Cc:** Francis DeVito <fdevito@FDEVITOLAW.COM>; gorlando@ufcw.org; donald@ufcwlocal1d.org
**Subject:** Re: Peterson v. Cigna, et als

Rosanna:
        What date(s) are proposed by your office for Dr. Peterson's deposition?

                                                              Warren Mangan


-----Original Message-----
From: Rosanna DiCarlo <rdicarlo@FDEVITOLAW.COM>
To: ocmlawyers@aol.com <ocmlawyers@aol.com>; chapmanj@litchfieldcavo.com <chapmanj@litchfieldcavo.com>; AndrewBorg@msn.com <AndrewBorg@msn.com>; mhorn@archerlaw.com <mhorn@archerlaw.com>
Cc: Francis DeVito <fdevito@FDEVITOLAW.COM>; gorlando@ufcw.org <gorlando@ufcw.org>; donald@ufcwlocal1d.org <donald@ufcwlocal1d.org>
Sent: Thu, Feb 27, 2020 10:54 am
Subject: RE: Peterson v. Cigna, et als

As of this date the deposition of Dr. Peterson has not been rescheduled.  As far as PHX, we are still waiting for confirmation from Mr. Horn if his client is avail on the March 23rd per his February 23rd email.

Thank you



**From:** ocmlawyers@aol.com <ocmlawyers@aol.com>
**Sent:** Monday, February 24, 2020 2:10 PM
**To:** chapmanj@litchfieldcavo.com; Rosanna DiCarlo <rdicarlo@FDEVITOLAW.COM>; AndrewBorg@msn.com; mhorn@archerlaw.com
**Cc:** Francis DeVito <fdevito@FDEVITOLAW.COM>; gorlando@ufcw.org; donald@ufcwlocal1d.org
**Subject:** Re: Peterson v. Cigna, et als

Folks:
        While we are at it, can we please confirm the date(s) for Dr. Peterson and PHX. Thanks!

                                                              Warren Mangan


-----Original Message-----
From: Chapman, T. Justin <chapmanj@litchfieldcavo.com>
To: Rosanna DiCarlo <rdicarlo@FDEVITOLAW.COM>; ocmlawyers@aol.com <ocmlawyers@aol.com>; AndrewBorg@msn.com <AndrewBorg@msn.com>; mhorn@archerlaw.com <mhorn@archerlaw.com>
CC: Francis DeVito <fdevito@FDEVITOLAW.COM>; gorlando@ufcw.org <gorlando@ufcw.org>; donald@ufcwlocal1d.org <donald@ufcwlocal1d.org>
Sent: Mon, 24 Feb 2020 10:11
Subject: RE: Peterson v. Cigna, et als

Hi Rosanna,

Per our conversation, we are adjourning the depositions of NLB and Olga Cognetta scheduled for 2/26 and 2/27.  We will conduct the NLB deposition on 3/6 at 11 am in your office.  We will conduct the deposition of Ms. Cognetta on 3/9 at 11 am in your office.  We will not adjourn these again.

Thank you for your courtesy.

Thanks,
Justin

**T. Justin Chapman**
Partner
Licensed in Pennsylvania & New Jersey
D 215.999.5784 | F 215.557.3771| C 215.485.8914
ChapmanJ@LitchfieldCavo.com

LITCHFIELD
——————— CAVO LLP
ATTORNEYS AT LAW
1515 Market Street| Suite 1220 | Philadelphia, PA 19102
**www.LitchfieldCavo.com**

Atlanta | Boston area | Chicago | Dallas-Fort Worth | Fort Lauderdale | Hartford area | Houston | Indiana
Las Vegas | Los Angeles area | Louisiana | Milwaukee | New Jersey | New York | Philadelphia | Phoenix
Pittsburgh | Providence | Salt Lake City | St. Louis | Tampa | West Virginia

PRIVILEGE AND CONFIDENTIALITY NOTICE: The information contained in this e-mail and any attachments may be legally privileged and confidential. If you are not an intended recipient, you are hereby notified that any dissemination, distribution or copying of this e-mail is strictly prohibited. If you have received this e-mail in error, please notify the sender and permanently delete the e-mail and any attachments immediately. You should not retain, copy or use this e-mail or any attachment for any purpose, nor disclose all or any part of the contents to any other person.

**From:** Rosanna DiCarlo <rdicarlo@FDEVITOLAW.COM>
**Sent:** Friday, February 21, 2020 10:57 AM
**To:** Chapman, T. Justin <chapmanj@litchfieldcavo.com>; ocmlawyers@aol.com; AndrewBorg@msn.com; mhorn@archerlaw.com
**Cc:** Francis DeVito <fdevito@FDEVITOLAW.COM>; gorlando@ufcw.org; donald@ufcwlocal1d.org
**Subject:** RE: Peterson v. Cigna, et als

Counselors,

Due to this mandatory trial Mr. DeVito has scheduled for February 27, if  we need to push the deposition of Olga Cognetta, do the following dates work **March 5, 6 or 9 at 10 a.m.** in this office.

Please advise asap.

Thank you all for your cooperation.

Rosanna

**From:** Chapman, T. Justin <chapmanj@litchfieldcavo.com>
**Sent:** Wednesday, February 19, 2020 2:44 PM
**To:** ocmlawyers@aol.com; Rosanna DiCarlo <rdicarlo@FDEVITOLAW.COM>; AndrewBorg@msn.com; mhorn@archerlaw.com
**Cc:** Francis DeVito <fdevito@FDEVITOLAW.COM>; gorlando@ufcw.org; donald@ufcwlocal1d.org
**Subject:** RE: Peterson v. Cigna, et als

6

9:30 is fine with me.  Thanks.


Justin


**T. Justin Chapman**
Partner
Licensed in Pennsylvania & New Jersey
D 215.999.5784 | F 215.557.3771| C 215.485.8914
ChapmanJ@LitchfieldCavo.com

LITCHFIELD
———————— CAVO LLP
ATTORNEYS AT LAW

1515 Market Street| Suite 1220 | Philadelphia, PA 19102
www.**LitchfieldCavo.com**

Atlanta | Boston area | Chicago | Dallas-Fort Worth | Fort Lauderdale | Hartford area | Houston | Indiana
Las Vegas | Los Angeles area | Louisiana | Milwaukee | New Jersey | New York | Philadelphia | Phoenix
Pittsburgh | Providence | Salt Lake City | St. Louis | Tampa | West Virginia

PRIVILEGE AND CONFIDENTIALITY NOTICE: The information contained in this e-mail and any attachments may be legally privileged and confidential. If you are not an intended recipient, you are hereby notified that any dissemination, distribution or copying of this e-mail is strictly prohibited. If you have received this e-mail in error, please notify the sender and permanently delete the e-mail and any attachments immediately. You should not retain, copy or use this e-mail or any attachment for any purpose, nor disclose all or any part of the contents to any other person.


**From:** ocmlawyers@aol.com <ocmlawyers@aol.com>
**Sent:** Wednesday, February 19, 2020 1:01 PM
**To:** rdicarlo@FDEVITOLAW.COM; AndrewBorg@msn.com; Chapman, T. Justin <chapmanj@litchfieldcavo.com>; mhorn@archerlaw.com
**Cc:** fdevito@FDEVITOLAW.COM; gorlando@ufcw.org; donald@ufcwlocal1d.org
**Subject:** Re: Peterson v. Cigna, et als

Ms. DiCarlo:
            We'll be there at 9:30 am on 2/27. Warren Mangan


-----Original Message-----
From: Rosanna DiCarlo <rdicarlo@FDEVITOLAW.COM>
To: Andrew Borg <AndrewBorg@msn.com>; Chapman, T. Justin <chapmanj@litchfieldcavo.com>; Horn, Michael S. <mhorn@archerlaw.com>
Cc: ocmlawyers@aol.com <ocmlawyers@aol.com>; Francis DeVito <fdevito@FDEVITOLAW.COM>
Sent: Wed, Feb 19, 2020 12:38 pm
Subject: Peterson v. Cigna, et als

Dear Counselors,

As you all know the deposition of Olga Cognetta is scheduled for February 27th 2020 at 11:00 a.m. in my office.

Mr. DeVito has just been advised that he has to be in court on a continuation of a mandatory trial at 1:30 on the 27th.

We would respectfully request the deposition of Ms. Cognetta begin at 9:30  and should be concluded by 12:30

Kindly advise if said time is agreeable.

Thank you.

Rosanna DiCarlo, **Paralegal**
Francis J. DeVito, P.A.
250 Moonachie Road
Suite 305
Moonachie, NJ 07074

(201) 487-7575
(201) 487-1646 – fax

PRIVILEGE AND CONFIDENTIALITY NOTICE
The information contained in this email and any attachments may be legally privileged and confidential. If you are not an intended recipient, you are hereby notified that any dissemination, distribution or copying of this email is strictly prohibited. If you have received this email in error, please notify the sender and permanently delete the email and any attachments immediately. You should not retain, copy or use this email or any attachment for any purpose, nor disclose all or any part of the contents to any other person. Thank you.
Atlanta | Boston area | Chicago | Dallas-Fort Worth | Fort Lauderdale | Hartford area | Houston | Indiana
Las Vegas | Los Angeles | Louisiana | Milwaukee | New Jersey | New York | Philadelphia
Phoenix | Pittsburgh | Providence | Salt Lake City | St. Louis | Tampa | West Virginia

PRIVILEGE AND CONFIDENTIALITY NOTICE
The information contained in this email and any attachments may be legally privileged and confidential. If you are not an intended recipient, you are hereby notified that any dissemination, distribution or copying of this email is strictly prohibited. If you have received this email in error, please notify the sender and permanently delete the email and any attachments immediately. You should not retain, copy or use this email or any attachment for any purpose, nor disclose all or any part of the contents to any other person. Thank you.
Atlanta | Boston area | Chicago | Dallas-Fort Worth | Fort Lauderdale | Hartford area | Houston | Indiana
Las Vegas | Los Angeles | Louisiana | Milwaukee | New Jersey | New York | Philadelphia
Phoenix | Pittsburgh | Providence | Salt Lake City | St. Louis | Tampa | West Virginia

PRIVILEGE AND CONFIDENTIALITY NOTICE
The information contained in this email and any attachments may be legally privileged and confidential. If you are not an intended recipient, you are hereby notified that any dissemination, distribution or copying of this email is strictly prohibited. If you have received this email in error, please notify the sender and permanently delete the email and any attachments immediately. You should not retain, copy or use this email or any attachment for any purpose, nor disclose all or any part of the contents to any other person. Thank you.
Atlanta | Boston area | Chicago | Dallas-Fort Worth | Fort Lauderdale | Hartford
area | Houston | Indiana
Las Vegas | Los Angeles | Louisiana | Milwaukee | New Jersey | New York | Philadelphia
Phoenix | Pittsburgh | Providence | Salt Lake City | St. Louis | Tampa | West Virginia

INFORMATION CONTAINED IN THIS E-MAIL TRANSMISSION IS PRIVILEGED AND CONFIDENTIAL. IF YOU ARE NOT THE INTENDED RECIPIENT OF THIS EMAIL, DO NOT READ, DISTRIBUTE OR REPRODUCE THIS TRANSMISSION (INCLUDING ANY ATTACHMENTS). IF YOU HAVE RECEIVED THIS E-MAIL IN ERROR, PLEASE IMMEDIATELY NOTIFY THE SENDER BY TELEPHONE OR EMAIL REPLY.

INFORMATION CONTAINED IN THIS E-MAIL TRANSMISSION IS PRIVILEGED AND CONFIDENTIAL. IF YOU ARE NOT THE INTENDED RECIPIENT OF THIS EMAIL, DO NOT READ, DISTRIBUTE OR REPRODUCE THIS TRANSMISSION (INCLUDING ANY ATTACHMENTS). IF YOU HAVE RECEIVED THIS E-MAIL IN ERROR, PLEASE IMMEDIATELY NOTIFY THE SENDER BY TELEPHONE OR EMAIL REPLY.

INFORMATION CONTAINED IN THIS E-MAIL TRANSMISSION IS PRIVILEGED AND CONFIDENTIAL. IF YOU ARE NOT THE INTENDED RECIPIENT OF THIS EMAIL, DO NOT READ, DISTRIBUTE OR REPRODUCE THIS TRANSMISSION (INCLUDING ANY ATTACHMENTS). IF YOU HAVE RECEIVED THIS E-MAIL IN ERROR, PLEASE IMMEDIATELY NOTIFY THE SENDER BY TELEPHONE OR EMAIL REPLY.