**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| **IN RE MOTION TO COMPEL COMPLIANCE WITH RULE 45 SUBOPEONA ISSUED TO ETHICARE ADVISORS, INC.,** | Civ. A. No. 20-1886 (WJM)<br><br>**OPINION** |

**FALK, U.S.M.J.**

This is a Rule 45 subpoena action relating to an underlying case pending in the United States District Court for the District of Idaho, *Star Dialysis, LLC, et al. v. WinCo Foods Employee Benefit Plan, et al.*, No. 1:18-cv-00482-EJL-CWD (D. Idaho) (the "Idaho Action"). Petitioner Star Dialysis/DaVita Inc. ("DaVita") -- Plaintiff in the Idaho Action -- has moved to compel compliance with a Rule 45 subpoena seeking documents served on Respondent EthiCare Advisors, Inc. ("EthiCare"), a New Jersey-based non-party. [ECF No. 1.] The motion has been fully briefed, including reply papers and the submission of supplemental authority.[1] The Court held two conferences to discuss the motion, although formal oral argument was not held nor is it necessary. *See* Fed. R. Civ. P. 78(b). For the reasons set forth below, Petitioner's motion to enforce the subpoena is **DENIED**.

---

[1] DaVita, apparently unsure if a reply brief was permitted in the context of this motion, filed a formal motion for leave to submit a reply brief. The motion is **GRANTED**. [ECF No. 10.] In addition, Respondent submitted supplemental authority, which has been considered,

## BACKGROUND[2]

The Idaho Action is a straightforward ERISA case.  DaVita is a provider of dialysis services across the United States, including to the beneficiaries of the WinCo Food Employee Benefit Plan.  Prior to 2017, DaVita was "in-network" with the WinCo Plan; that is, WinCo Plan beneficiaries who needed dialysis treatment had access to a Blue Cross of Idaho network of providers, including DaVita.  As an "in-network" provider, DaVita was reimbursed for dialysis services at a rate that it negotiated with Blue Cross of Idaho.

EthiCare is a New Jersey-based medical claims settlement, cost containment, and consulting services company.  Beginning in January 2017, DaVita alleges that the WinCo Plan made two substantial changes to reimbursement methods pursuant to EthiCare's advice: (1) it effectively eliminated in-network coverage for dialysis services; and (2) drastically reduced reimbursement for dialysis services by out-of-network providers.  Following these changes, the WinCo Plan reimburses out-of-network providers via a "usual, customary, and reasonable" rate ("UCR").  The UCR rate is a term of art in the healthcare industry and refers to the amount paid for a medical service in a geographic area based on what providers in the area usually charge for the same or similar medical services.

On August 16, 2019, DaVita filed the operative complaint in the District of Idaho, which contains two counts: (1) a claim for benefits under ERISA; and (2) a state law claim based in promissory estoppel and *quantum meruit*.

In November 2019, discovery was served in the Idaho Action.  DaVita sought, among

---

along with Petitioner's response to same.  [ECF Nos. 24-25.]
[2] This section is drawn from the parties' papers.  Direct citations are generally omitted.

2

other things, information and documents that describe the methodology through which WinCo and EthiCare calculate the UCR. In response, WinCo advised that "it relies on EthiCare's processes, expertise, and input as the dialysis contract administrator to make such calculations," and that responsive information is within EthiCare's possession, custody, and control.

On November 22, 2019, DaVita served the current subpoena on EthiCare. The subpoena contains 15 document requests ("Topics") and sets production to occur at EthiCare's counsel's office in New Jersey. The Topics are as follows:

- Topics 1 and 7-9 seek documents and information relating to EthiCare's program and specific patient determinations. EthiCare has agreed to produce this information and has started doing so. The issue seems to be when the production will be complete. EthiCare refers to these Topics as "moot."

- Topic 14 seeks communications between WinCo. and EthiCare. The papers states that the parties have been meeting and conferring over this subject, including whether all these communications could be provided by the Defendant in the Idaho case (WinCo) as opposed to from a third-party (EthiCare).

- Topics 10-13. This is the crux of the parties' dispute. These topics seek, in shorthand description, EthiCare's proprietary methodology for calculating dialysis reimbursement rates.

DaVita claims that Topics 10-13 go to the "core" of its underlying case, which is the claim that EthiCare caused WinCo to lower reimbursement rates for dialysis treatment. While conceding that this information may be sensitive business information, DaVita states that any concerns about confidentiality are addressed by the presence of a discovery confidentiality order in place in the Idaho Action.

EthiCare claims that its reimbursement methodology is a closely guarded "trade secret" that it has never released to anyone, including its own clients. EthiCare contends the

3

methodology is not relevant at all, let alone a "core" issue in the underlying case. In its view, DaVita contends it was not paid a reasonable UCR – this, according to EthiCare, simply requires a comparison of what DaVita was paid versus what it thinks it should have been paid. In other words, it does not matter how EthiCare and WinCo reached their number – either the number is reasonable and appropriate or not; how they reached their number is beside the point.

## LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 45, a party has a general right to subpoena any person to produce relevant documents during the course of litigation. Fed. R. Civ. P. 45. "The permissible scope of discovery under Rule 45 is the same as under Rule 26(b)." *Mallinckrodt LLC v. Actavis Labs*, 2017 WL 5476801, at *2 (D.N.J. Feb. 10, 2017).

Federal Rule of Civil Procedure 26(b)(1) provides that a party may obtain discovery regarding "any nonprivileged material that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.* It is "well recognized that the federal rules allow broad and liberal discovery." *Pacini v. Macy's*, 193 F.3d 766, 777-78 (3d Cir. 1999). Relevance is a broader inquiry at the discovery stage than at the trial stage, *see Nestle Food Corp. v. Aetna Cos. & Surety Co.*, 135 F.R.D. 101, 103 (D.N.J. 1990), and "relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Pearson v. Miller*, 211 F.3d 57, 65 (3d Cir. 2000).

While relevant information need not be admissible, the burden remains on the party

seeking discovery to "show that the information sought is relevant to the subject matter of the action and may lead to admissible evidence." *Caver v. City of Trenton*, 192 F.R.D. 154, 159 (D.N.J. 2000).  A court may limit or deny otherwise appropriate discovery when the information sought is not proportional to the needs of the case when certain factors are considered, including burden and expense.  *Schick v. Cintas Corp.*, 2020 WL 1873004, at *3 (D.N.J. Apr. 15, 2020); *see also Mannington Mills, Inc. v. Armstrong World Indus. Inc.*, 206 F.R.D. 525, 529 (D. Del. 2002) (even if discovery is relevant, should be disallowed "where the potential harm caused by production outweighs the benefit").

In assessing the reasonableness of a subpoena, the Court balances several factors: (1) the relevance; (2) the need of the party for the documents; (3) the breadth of the document request; (4) the time period covered by it; (5) the particularity with which the documents are described; (6) the burden imposed; and (7) the subpoena recipient's status as a nonparty to the litigation. *Biotechnology Value Fund, L.P. v. Celera Corp.*, 2014 WL 4272732, at *2 (D.N.J. Aug. 28, 2014).

## **DECISION**[3]

The focus of Topics 10-13 is EthiCare's "repricing methodology."  EthiCare describes

---

[3] This section is focused on Topics 10-13, which constitute the overwhelming majority of the parties' papers.  With respect to Topics 1 and 7-9, the papers reflect that production has begun and that the issue is simply when the production will be complete.  Indeed, EthiCare refers to these topics as "moot."  To the extent this is still an issue, the parties are directed to continue meet-and-confer efforts on these Topics.

With respect to Topic 14, the papers are not entirely clear whether this remains at issue.  The Court will not order a non-party to produce the same documents that are in possession of WinCo -- a party to the Idaho Action -- at this time, especially because their relevance is doubtful and not persuasively explained.  If, following this Opinion, Topic 14 remains in dispute, the parties can meet-and-confer and submit updated and concise information relating to

its methodology as "a complex formula . . . that generates recommended prices for dialysis-related treatments and services." (Declaration of Matthew Mikulski (Mikulski Decl.,) ¶ 4.) The formula "takes into account a variety of factors to generate the . . . UCR rate." (*Id*., ¶¶ 6-7.) Cost containment companies like EthiCare "must use their judgment to decide what inputs [are] included in the UCR rate calculation . . . [including] the size of the geographical region[,] and [the application of a] sophisticated statistical analysis to generate the UCR rate." (*Id*., ¶¶ 8-10.) The methodology that emerges from this process is closely held business information that EthiCare contends is a trade secret. (*Id.*) For purposes of this motion, the Court agrees that the repricing methodology is, at a minimum, certainly confidential business information – if not likely a trade secret. *See, e.g.*, *P.C. of Yonkers, Inc. v. Celebrations! The Party and Seasonal Superstore, LLC*, 2007 WL 708978, at *10 (D.N.J. Mar. 5, 2007) ("New Jersey has adopted the definition of a trade secret provided in the Restatement of Torts: 'A trade secret may consist of any formula, pattern, device or compilation of information which is used in one's business and which gives him an opportunity to obtain an advantage over competitors who do not know or use it."). While confidential information is not privileged or immune from discovery *per se*, courts are generally willing to weigh and balance such concerns when considering proportionality and the need for such discovery in a case. *See*, *e.g.*, *Coca-Cola Bottling Co. of Shreveport v. Coca-Cola Co.*, 107 F.R.D. 288, 292 (D. Del. 1985) ("[O]nce the information is shown to be a trade secret], the burden shifts to the party seeking discovery to establish that the disclosure of trade secrets is relevant and necessary to the action.").

      Discovery always involves balance – relevance and need versus proportionality, business

---

this Topic.

interests, and burden and expense. *See generally* Fed. R. Civ. P. 26(b). Here, we have clearly sensitive business information; therefore, the question becomes: how relevant is it to the case at hand and should it be produced despite its obvious sensitivity and the non-party business interests involved? *Id.* The answer: This Court does not believe the information DaVita seeks is relevant.

The underlying issue in the Idaho Action is whether WinCo violated its employee benefit plan by failing to reimburse out-of-network dialysis at the UCR rate. This does not require an analysis of *how* WinCo's UCR rate was reached. The issue is more basic: WinCo claims that the rate it reimbursed at is an appropriate amount; DaVita contends it should be entitled to more. Indeed, DaVita contends that WinCo/EthiCare's rate is "many multiples" less than what it should receive. That requires a comparison of two numbers: WinCo's number and DaVita's number - buttressed by argument and perhaps expert reports regarding prevailing rates. It does not require a deep dive into EthiCare's highly confidential reimbursement methodology. If WinCo's reimbursement rate is truly "many multiples" less than what is appropriate, DaVita will prevail – regardless of how EthiCare's rate was reached.[4]

---

[4] The parties' briefs do not cite any case law, let alone binding authority, on the discoverability and/or relevance of this type of information in an ERISA case. However, on August 7, 2020, EthiCare submitted supplemental authority from the New Jersey Superior Court in the form of an Order entered on July 13, 2020, in the case of *Peterson v. Cigna Health and Life Insurance Co.*, BER-l-518-18, N.J. Super. Ct. (Law Division). [ECF No. 24.] *Peterson* is not binding authority and is a limited slip order, however, it does support EthiCare's position in this case.

In *Peterson*, much like here, the plaintiff sued alleging a breach of contract to pay the reasonable cost of medical services. (*Id.*, Ex. B.) The defendant had engaged a medical cost-containment company, much like WinCo and EthiCare here. (*Id.*) Plaintiff served the cost containment company – Zelis Claims Integrity LLC – with a non-party subpoena, seeking, among other things, pricing and repricing reports associated with its claim management. (*Id.*,

The confidentiality of the information is a further reason to deny the discovery. While the parties appear to quibble over whether the repricing methodology is actually a trade secret, there is no dispute in the papers that the information is sensitive business information that would impact EthiCare's business if made publicly available. DaVita claims that the presence of a discovery confidentiality order negates that risk. But, even assuming a DCO would reduce or limit exposure, there is no need to get that far. As stated earlier, a court may limit or deny discovery – even if otherwise relevant (which has not been shown here) – if it is not proportional to the needs of the case and is otherwise burdensome. The discovery sought here is not proportional to the needs of the case – and on the other hand, constitutes confidential business information that EthiCare represents is not even shown to its own customers. Before invading a company's private business information and ordering it produced, the Court requires a showing of some actual need for the information. No such showing is made in this case.

## **CONCLUSION**

Based on the above, DaVita has not shown that the information sought through Topics 10-13 is relevant, and even if it had some minimal possible relevance, it would not be proportional to the needs of the cases when considering the full range of interests involved.

---

Ex. B.) Zelis opposed the subpoena by arguing the information sought was confidential business information and not relevant because the issue was whether the defendant had paid the claim at the agreed-to rate. In denying a motion to compel compliance with the subpoena, the Superior Court Judge found that the repricing information sought was not relevant because the claim did "not arise out of, nor [were] they dependent upon, how Zelis priced the claim." (*Id.* Ex. A.) As is described in the body of the Opinion, that is the same case here.

For that reason, the motion to compel compliance with the Rule 45 subpoena [ECF No. 1] is **DENIED**.

<u>s/Mark Falk</u>
**MARK FALK**
**Chief U.S. Magistrate Judge**

**DATED: August 12, 2020**